[No. 39448-1-II.   Division Two.   June 26, 2012.]

*In the Matter of the Personal Restraint of* Nicholas Daniel Hacheney, *Petitioner.*

*Jeffrey E. Ellis* (of *Oregon Capital Resource Center*), for petitioner.

*Russell D. Hauge, Prosecuting Attorney*, and *Randall A. Sutton, Deputy*, for respondent.

¶1 VAN DEREN, J. — A jury convicted Nicholas Daniel Hacheney of first degree premeditated murder. In this personal restraint petition (PRP),[1] Hacheney first argues that the trial court violated his Sixth Amendment right to confront witnesses when it admitted a toxicology laboratory report from the Washington State Patrol (WSP) Crime Laboratory and allowed testimony regarding the report without the forensic analyst testifying at trial and being subject to cross-examination. He also asserts that newly discovered evidence of problems at the WSP Crime Laboratory requires vacation of his conviction.

¶2 Hacheney also argues that the trial court (1) violated his confrontation clause rights when it admitted the videotaped depositions of three witnesses at trial and violated his constitutional right to a public trial[2] when it excluded his father from these witnesses' depositions, (2) improperly commented on the evidence by including the phrase "consciousness of guilt" in its ER 404(b) limiting instruction, and (3) violated his due process rights[3] by giving the jury the limiting instruction. Finally, Hacheney argues that both his trial and appellate counsel were ineffective and that cumulative error requires reversal of his conviction. We deny his request for relief.

---

[1] Hacheney filed a motion for reconsideration with this court on February 17, 2012, arguing that we improperly addressed the retroactivity of *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009) and improperly concluded that Hacheney's direct appeals were final for purposes of retroactivity analysis; he also argues that we improperly applied the PRP standards of review in addressing his ineffective assistance of counsel claims. We grant his motion for reconsideration solely to address whether, even if a determination that his direct appeals were final before the United States Supreme Court issued *Melendez-Diaz* was erroneous in resolving his PRP issue, such a determination is harmless in this case. We include additional facts to elucidate our opinion in response to Hacheney's reconsideration motion.

[2] U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.

[3] U.S. CONST. amend. XIV.

## FACTS

¶3 On December 26, 1997, Hacheney left his home early in the morning to go hunting with Phil Martini and Lindsey Latsbaugh. After Hacheney left, his neighbors noticed that the Hacheney home was on fire. The fire damaged the bedroom. Fire fighters found Hacheney's wife's body in bed as well as propane canisters and an electric space heater in the bedroom.

¶4 Hacheney told investigators that he and his wife, Dawn Hacheney,[4] had opened Christmas presents, including the propane canisters, the night before and had left the gifts in the room with the wrapping paper in front of the space heater. He said that he had turned on the space heater when he woke up that morning and that Dawn may have failed to escape the fire because she had taken Benadryl during the night.

¶5 When Dr. Emmanuel Lacsina, a Kitsap County medical examiner, performed an autopsy on Dawn's body, he found that she did not have soot in her trachea or lungs and that she had pulmonary edema, a condition that can result from congestive heart failure, drowning, a drug overdose, head injury, or suffocation. He also collected blood and lung samples. Dr. Lacsina requested a toxicology report after the autopsy results made him "suspicious" that Dawn may have been dead before the fire consumed the Hacheneys' home based on his autopsy results. Report of Proceedings (RP) at 943.

¶6 Egle Weiss, a WSP Crime Laboratory toxicologist, tested the blood and tissue samples Dr. Lacsina provided. These tests revealed no carbon monoxide in Dawn's blood and lungs and no propane in her lungs, indicating that Dawn did not inhale after the fire began. Weiss's tests also

---

[4] We refer to Dawn Hacheney by her first name and Nicholas Hacheney as "Hacheney" to avoid confusion. No disrespect is intended.

revealed an elevated level of Benadryl in Dawn's body. But the original police and insurance investigations concluded that Dawn's death was accidental. Based on Weiss's toxicology report, the lack of suspicion of foul play, and other information available at the time, Dr. Lacsina concluded that Dawn's larynx had spasmed reflexively during the fire, causing her to suffocate.

¶7 In 2001, new facts came to light, causing investigators to take a second look at the circumstances surrounding Dawn's death. Sandra Glass told investigators that she had an affair with Hacheney during the summer and fall of 1997. Glass told investigators that a few weeks after Dawn's death, Hacheney had told her that God had told him to "[t]ake the land,"[5] that he had held a plastic bag over Dawn's head until she stopped breathing, and that he had then started the fire. RP at 2334. Investigators also discovered that in the months following Dawn's death, Hacheney had sexual relationships with at least three other women. The State charged Hacheney with first degree premeditated murder, alleging that he had committed the murder in the course of first degree arson.[6]

¶8 Three months before trial, the trial court granted the State's request to take the preservation videotaped depositions of three witnesses who were planning to be out of the country during the scheduled trial, to be used in place of live testimony at trial. The State had all three witnesses

---

[5] This is a biblical phrase that members of his church interpreted as a command to act. *State v. Hacheney*, 160 Wn.2d 503, 508, 158 P.3d 1152 (2007).

[6] The State initially charged Hacheney with first degree premeditated murder and/or first degree felony murder committed in the course of, in furtherance of, or in flight from first degree arson. *Hacheney*, 160 Wn.2d at 508. The State amended the information to charge Hacheney with aggravated first degree murder, alleging that Hacheney committed the murder to conceal the commission of a crime and/or he committed the murder in the course of, in furtherance of, or in immediate flight from the crime of first degree arson. *Hacheney*, 160 Wn.2d at 508. Hacheney successfully challenged the probable cause basis for charges of felony murder, murder to conceal a crime, or murder in furtherance of or in immediate flight from arson, and those charges were dismissed; thus the case went to trial on the charge of aggravated premeditated first degree murder committed in the course of first degree arson. *Hacheney*, 160 Wn.2d at 508.

under subpoena for trial, but two of the witnesses, a married couple, were moving to Scotland for three years, and the third witness, an electrical engineer, was moving to Bolivia for six months. The State argued, in part, that it would be burdensome for the witnesses to return for trial and that it would be financially burdensome for the State to bring them back for trial. The trial court denied Hacheney's father's request to attend these depositions.

¶9 By the time this matter came to trial, Weiss had died unexpectedly and was unavailable to testify about her laboratory analyses, but Dr. Barry Logan and Weiss had both signed her report. Dr. Logan was Weiss's supervisor in 1997, and he testified about the WSP Crime Laboratory's testing procedures for blood and tissue samples. The trial court admitted Weiss's "Death Investigation Toxicology Report" over Hacheney's objections. Ex. 323. Dr. Lacsina, Dr. Daniel Selove, and Dr. Logan testified at trial. Drs. Lacsina and Selove testified that Dawn had died from suffocation before the fire started, and both doctors based their opinions, in part, on Weiss's laboratory report.

¶10 At the close of trial, the trial court gave the following limiting instruction with regard to evidence of Hacheney's sexual relationships shortly after Dawn died in the fire:

> Evidence has been introduced in this case on the subject of the Defendant's relationships with several women for the limited purposes of whether the Defendant acted with motive, intent or premeditation, or as evidence of consciousness of guilt. You must not consider this evidence for any other purpose.

Clerk's Papers at 1355. The jury found Hacheney guilty of first degree premeditated murder and found, by special verdict, that he had committed the murder in the course of first degree arson.

¶11 On direct appeal, Hacheney raised 29 issues. *State v. Hacheney*, noted at 128 Wn. App. 1061, 2005 WL 1847160, at *1, 2005 Wash. App. LEXIS 1940, at *1 (*Hacheney* I), *aff'd*

*in part and rev'd in part*, 160 Wn.2d 503, 158 P.3d 1152 (2007) (*Hacheney* II). Hacheney's arguments included assertions that (1) the evidence was insufficient to support the jury's finding that he committed the murder in the course of first degree arson; (2) the trial court violated his right to confrontation by allowing Drs. Lacsina, Logan, and Selove to rely on Weiss's written laboratory report; (3) the trial court violated his Sixth Amendment right to confront witnesses against him when it admitted the pretrial depositions of three witnesses; (4) the trial court violated his constitutional right to a public trial by not allowing his father to attend the State's depositions of witnesses who were expected to be out of the country during the trial; and (5) the trial court erred by including the phrase "consciousness of guilt" in the limiting jury instruction. *Hacheney* I, 2005 WL 1847160, at *3, *5-7, 2005 Wash. App. LEXIS 1940, at *8, *17-18, *23, *26-27.

¶12 We rejected Hacheney's confrontation clause challenge to the trial court's admission of Weiss's toxicology report and the experts' testimony based on it.[7] *Hacheney* I, 2005 WL 1847160, at *3, *7-10, 2005 Wash. App. LEXIS 1940, at *7-8, *27-39. We affirmed his conviction, rejecting his remaining arguments as well. *Hacheney* I, 2005 WL 1847160, at *15, 2005 Wash. App. LEXIS 1940, at *59.

¶13 Our Supreme Court reviewed two of the arguments Hacheney raised in his first direct appeal: whether (1) the evidence supported the jury's finding that Hacheney had committed the murder in the course of first degree arson and (2) the trial court violated his Sixth Amendment right to confront witnesses by admitting the videotaped depositions of the three witnesses at trial. *Hacheney* II, 160 Wn.2d at 506. Our Supreme Court, however, did not review the confrontation clause challenge to Weiss's toxicology report and its contents. It held that as a matter of law, Hacheney did not murder his wife in the course of arson and vacated

---

[7] Hacheney did not raise any ineffective assistance of counsel claims during any of his previous appeals. Because he raises them for the first time in his PRP, those claims do not implicate finality concerns.

the aggravating factor. *Hacheney* II, 160 Wn.2d at 506, 520. Our Supreme Court also held that Hacheney's rights under the confrontation clause were not violated by admission of the videotaped depositions of the three witnesses because the witnesses were unavailable. *Hacheney* II, 160 Wn.2d at 506.

¶14 On remand from our Supreme Court for resentencing without the aggravating factor, on June 20, 2008, the trial court resentenced Hacheney. A year later, on June 25, 2009, the United States Supreme Court issued its opinion in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009). On October 27, 2009, we rejected Hacheney's challenge to the standard range sentence imposed on remand but again remanded to the trial court to impose the correct community custody term pursuant to the statutes applicable when Hacheney committed his crime. *State v. Hacheney*, noted at 152 Wn. App. 1052, 2009 WL 3439962, at *4, 2009 Wash. App. LEXIS 2669, at *10-11 (*Hacheney* III). On April 28, 2010, our Supreme Court denied his petition for review of our second opinion addressing his resentencing and, on May 6, we issued our mandate. Hacheney's time to file a petition for certiorari to the United States Supreme Court expired on June 27, 2010.

¶15 In his motion for reconsideration of our opinion issued in this PRP, Hacheney failed to identify any statute or court rule allowing him to raise in the *resentencing* proceedings on remand a confrontation clause challenge to the trial court's admission of Weiss's toxicology report and the experts' testimony, an issue that he raised and we decided in his first appeal in 2005, and which issue our Supreme Court did not review. *Hacheney* I, 2005 WL 1847160, at *3, *5-7, 2005 Wash. App. LEXIS 1940, at *7-8, *17-27. Nor does the record indicate that he attempted to raise the confrontation clause issue during any resentencing proceeding or his second appeal. *Hacheney* III, 2009 WL 3439962, at *4, 2009 Wash. App. LEXIS 2669, at *10-11.

Nevertheless, on reconsideration, Hacheney now argues that for purposes of retroactivity and finality analysis of the confrontation clause issue raised in his first direct appeal decided in 2005, we look to the finality of his second direct appeal of the sentence imposed on remand, which he asserts became final on June 27, 2010, when his time for filing a petition for certiorari to the United States Supreme Court expired. We disagree and further hold that any error in the finality determination is harmless in this case.

## ANALYSIS

### Retroactivity of Confrontation Rights re Toxicology Report

¶16 Hacheney argues that *Bullcoming v. New Mexico*, ___ U.S. ___, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011) and *Melendez-Diaz* establish that the trial court's admission of Weiss's toxicology report and expert testimony relying on it to explain the basis of the experts' opinions violated his confrontation clause rights. Although reexamination of the merits of Hacheney's claim in light of the rapidly evolving area of confrontation clause jurisprudence in a direct appeal may well reach a different conclusion,[8] and that emerging law may change the outcome,[9] we hold that Washington law

---

[8] *See People v. Dendel*, 289 Mich. App. 445, 458-68, 471, 473, 797 N.W.2d 645 (2010) (holding that statements in toxicology report requested by medical examiner, who had not yet ruled death was a homicide but had become suspicious of the manner of death, were testimonial and subject to confrontation).

[9] We note that Justice Sotomayor, a member of the *Bullcoming* majority, concurred to expressly state that the majority was not reaching the issue of whether the confrontation clause bars expert witnesses from testifying about out-of-court, testimonial statements on which they based their independent opinions. 131 S. Ct. at 2722 (Sotomayor, J., concurring in part). Thus, neither *Bullcoming* nor *Melendez-Diaz* reached that issue. Accordingly, under current federal case law, the admission of out-of-court statements "for purposes other than establishing the truth of the matter asserted" does not violate the confrontation clause. *Crawford v. Washington*, 541 U.S. 36, 59 n.9, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

Further, under current Washington law, out-of-court statements on which experts base their opinions are not offered at trial as substantive proof, i.e., the truth of the matter asserted. *See Grp. Health Coop. of Puget Sound, Inc. v. Dep't*

precludes retroactive application of *Bullcoming* and *Melendez-Diaz* with regard to the admission of Weiss's toxicology report and the expert testimony relying on it in this PRP collateral attack on Hacheney's conviction.

## A. Standard of Review

■■ ¶17 A petitioner may request relief through a PRP when he is under unlawful restraint. RAP 16.4(a)-(c). In order to prevail on a PRP, the petitioner must show that there was a "constitutional error that resulted in actual and

---

*of Revenue*, 106 Wn.2d 391, 399-400, 722 P.2d 787 (1986) (citing *State v. Wineberg*, 74 Wn.2d 372, 382, 444 P.2d 787 (1968)). Rather, they are offered "only for the limited purpose of explaining the expert's opinion." 5D KARL B. TEGLAND, WASHINGTON PRACTICE: COURTROOM HANDBOOK ON WASHINGTON EVIDENCE ER 703 author's cmt. 6, at 387, ER 705 author's cmt. 7, at 400 (2011-2012 ed.); *see also State v. Lui*, 153 Wn. App. 304, 322-23, 221 P.3d 948 (2009), *review granted*, 168 Wn.2d 1018 (2010) (stating that admission of out-of-court statements did not implicate the confrontation clause because they were admitted to explain the bases for experts' opinions, not for the truth of the matter asserted); *State v. Anderson*, 44 Wn. App. 644, 652-53, 723 P.2d 464 (1986) (stating that trial court did not abuse its discretion in allowing the State's experts to testify about Anderson's out-of-court statements to them because the statements were not offered to prove the truth of the matter asserted); *State v. Fullen*, 7 Wn. App. 369, 379, 499 P.2d 893 (1972) (" 'The hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through extrajudicial statements.' " (quoting *Dutton v. Evans*, 400 U.S. 74, 88, 91 S. Ct. 210, 27 L. Ed. 2d 213 (1970))).

Thus, Hacheney fails to demonstrate a change in law regarding the interaction between the confrontation clause and out-of-court statements offered at trial to explain the basis of an expert's opinion under our existing law. Accordingly, the interests of justice do not require us to reconsider Hacheney's confrontation clause claim with respect to Drs. Lacsina's, Selove's, and Logan's testimony about out-of-court statements in Weiss's report on which they based their independent opinions. *See infra* p. 12.

But we further note that the United States Supreme Court recently issued its opinion in *Williams v. Illinois*, ___ U.S. ___, 132 S. Ct. 2221, 183 L. Ed. 2d 89 (2012). The Court held under different rationales that an expert's testimony about the basis of her opinion, including out-of-court statements in another laboratory's report not admitted into evidence, did not violate the confrontation clause. *Williams*, 132 S. Ct. at 2227-28 (plurality opinion), 2255-56 (Thomas, J., concurring).

We also note that the Washington State Supreme Court granted review in *Lui* and on September 19, 2011, stayed review pending the United States Supreme Court's decision in *Williams*. We, therefore, continue to rely on existing case law about the purpose for which trial courts admit facts and out-of-court statements forming the basis of expert opinions, but we note the uncertainty currently surrounding this area of law.

substantial prejudice to the petitioner or that there was a nonconstitutional error that resulted in a fundamental defect which inherently results in a complete miscarriage of justice." *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 409, 114 P.3d 607 (2005). The petitioner must show by a preponderance of the evidence that the error was prejudicial. *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004).

B. Intervening Change in Law

¶18 Kitsap County medical examiner Lacsina requested the toxicology report after autopsy results made him "suspicious" that Dawn may have been dead before a fire consumed the Hacheneys' home. RP at 943. Weiss was not available to testify about her laboratory tests and the results because she had died before trial. Thus, Drs. Lacsina, Selove, and Logan testified at trial, relying in part on Weiss's report. Hacheney appeals the admission of Weiss's report and the testimony relying on it, arguing that his confrontation rights were denied due to his inability to cross-examine the laboratory technician responsible for the reports relied upon that suggest that Dawn was dead before the fire in the bedroom started.

¶19 We previously rejected Hacheney's confrontation clause challenge in his direct appeal to the admission of Weiss's toxicology report at trial. *Hacheney* I, 2005 WL 1847160, at *9-10, 2005 Wash. App. LEXIS 1940, at *31-35. Hacheney now argues that the United States Supreme Court's subsequent decisions in *Bullcoming* and *Melendez-Diaz* warrant reversal of his convictions and remand for a new trial. But *Bullcoming* and *Melendez-Diaz* were direct appeals.

¶20 In contrast, a PRP is a collateral attack on a judgment. RCW 10.73.090(2). A collateral attack may not renew an issue "raised and rejected on direct appeal unless the interests of justice require relitigation of that issue." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1

(2004) (footnotes omitted). Reexamination of an issue serves the interests of justice if there was "an intervening change in law or some other justification for having failed to raise a crucial point or argument in the prior application." *Davis*, 152 Wn.2d at 671 n.15.

¶21 The United States Supreme Court characterized *Melendez-Diaz* as a "rather straightforward application of [its] holding in *Crawford* [*v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)]." *Melendez-Diaz*, 557 U.S. at 312. But our Supreme Court has stated that despite the United States Supreme Court's characterization of its own cases, those cases may still constitute a change to settled interpretations of the law in Washington. *State v. Robinson*, 171 Wn.2d 292, 301-03, 253 P.3d 84 (2011).

¶22 Indeed, one panel of Division One of this court has recognized *Melendez-Diaz* as superseding our Supreme Court's decisions in *State v. Kirkpatrick*, 160 Wn.2d 873, 161 P.3d 990 (2007) and *State v. Kronich*, 160 Wn.2d 893, 161 P.3d 982 (2007) on the issue of whether public or business records may nonetheless contain testimonial statements. *State v. Jasper*, 158 Wn. App. 518, 529-30, 532 n.6, 245 P.3d 228 (2010), *aff'd*, 174 Wn.2d 96, 271 P.3d 876 (2012). Our Supreme Court confirmed this observation and, based on *Bullcoming* and *Melendez-Diaz*, overruled its opinions in *Kirkpatrick* and *Kronich* on this issue. *Jasper*, 174 Wn.2d at 116. Further, another Division One panel observed that it is unclear whether *Bullcoming*, *Melendez-Diaz*, and *Michigan v. Bryant*, ___ U.S. ___, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011) may signal a departure from *Crawford*'s tenets. *See State v. Dash*, 163 Wn. App. 63, 72-74, 259 P.3d 319 (2011). We agree with our Supreme Court and Division One and hold, on this record, that *Bullcoming* and *Melendez-Diaz* constituted a change in Washington law regarding the characterization of out-of-court statements contained in Weiss's report as testimonial. The issue in this PRP, then, is whether this change in law can be retroactively applied to grant Hacheney's request for a new trial.

## C. Retroactivity of Collateral Attacks

¶23 Washington courts attempt to maintain congruence with the United States Supreme Court in our retroactivity analysis. *In re Pers. Restraint of Markel*, 154 Wn.2d 262, 268, 111 P.3d 249 (2005). Under our retroactivity analysis:

> A new rule will not be given retroactive application to cases on collateral review except where either: (a) the new rule places certain kinds of primary, private individual conduct beyond the power of the state to proscribe, or (b) the rule requires the observance of procedures implicit in the concept of ordered liberty.

*In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 326, 823 P.2d 492 (1992).

¶24 A rule is " 'new' " under retroactivity analysis if it " 'breaks new ground' " or " 'was not *dictated* by precedent existing at the time the defendant's conviction became final.' " *Markel*, 154 Wn.2d at 270 (quoting *Teague v. Lane*, 489 U.S. 288, 301, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) (plurality opinion)).

¶25 Under our retroactivity analysis, we will not retroactively apply a new rule of criminal procedure on collateral attack, subject to two exceptions: (1) the rule places "certain kinds of primary, private individual conduct beyond the State's power to prohibit" or (2) the rule requires "observance of procedures that are implicit in the concept of ordered liberty." *In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 666, 260 P.3d 874 (2011). The first exception does not apply here, as neither *Bullcoming* nor *Melendez-Diaz* decriminalized the conduct for which Hacheney was punished. *See Rhome*, 172 Wn.2d at 666. Thus, we turn to the second exception.

¶26 The second retroactivity exception applies to only a " 'small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the

criminal proceeding.' " *Markel*, 154 Wn.2d at 269 (internal quotation marks omitted) (quoting *Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004)). " 'That a new procedural rule is fundamental in some abstract sense is not enough; the rule must be one without which the likelihood of an accurate conviction is *seriously* diminished.' " *Rhome*, 172 Wn.2d at 667 (internal quotation marks omitted) (quoting *Summerlin*, 542 U.S. at 352). " '[T]his class of rules is extremely narrow, and it is unlikely that any . . . ha[s] yet to emerge.' "[10] *Markel*, 154 Wn.2d at 269 (alterations in original) (internal quotation marks omitted) (quoting *Summerlin*, 542 U.S. at 352). It would appear that the " 'small set' " is, in fact, an empty set of rules that " 'implicat[e] the fundamental fairness and accuracy of . . . criminal proceeding[s]' " sufficiently to warrant retroactive application, and, thus, the second exception may better be called a barrier to retroactivity. *Markel*, 154 Wn.2d at 269-70 (internal quotation marks omitted) (quoting *Summerlin*, 542 U.S. at 352).

¶27 In *Markel*, our Supreme Court considered whether the United States Supreme Court's decision in *Crawford*, 541 U.S. at 68, holding "testimonial" hearsay inadmissible at trial unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant, was retroactively applicable on collateral attack. 154 Wn.2d at 264-65. Our court first rejected the argument that *Crawford* did not constitute a "new" rule of criminal procedure to which retroactivity analysis applied, observing that *Crawford* broke from previous United States Supreme Court precedent. *Markel*, 154 Wn.2d at 270. It then reasoned that "*Crawford* is plainly seen as a new definition of the confrontation clause requirements, intended to more accurately reflect the constitutional framers' intent" and, thus, "[c]riminal defendants who were denied *Crawford*'s procedural requirements by reason of timing were not dis-

---

[10] Indeed, at the time of the *Markel* decision, the United States Supreme Court had yet to hold that any rule fell within this exception. 154 Wn.2d at 269 n.2.

possessed of all meaningful opportunity to challenge the admission of" testimony. *Markel*, 154 Wn.2d at 273. Accordingly, it rejected the argument that *Crawford* announced a " 'watershed rule[ ] of criminal procedure,' " " 'without which the likelihood of an accurate conviction is *seriously* diminished,' " that warranted retroactive application on collateral review. *Markel*, 154 Wn.2d at 273 (alteration in original) (internal quotation marks omitted) (quoting *Summerlin*, 542 U.S. at 352).

¶28 Here, it seems axiomatic that by demonstrating a change in the law, Hacheney has demonstrated a "new" rule of criminal procedure for purposes of retroactivity analysis. Furthermore, Division One's recent opinions establish that *Melendez-Diaz* has superseded two Washington State Supreme Court decisions and has called into question *Crawford*'s tenets. *Dash*, 163 Wn. App. at 72-74; *Jasper*, 158 Wn. App. at 529-30. Accordingly, we hold that Hacheney has demonstrated a "new" rule of criminal procedure for purposes of retroactivity analysis.

¶29 But under the *Markel* court's reasoning, *Bullcoming* and *Melendez-Diaz* represent even less of a watershed moment in criminal procedure than did *Crawford*. Where *Crawford* completely redefined the confrontation clause's requirements, *Melendez-Diaz* further explored the characteristics of testimonial statements under *Crawford* and, in turn, *Bullcoming* expanded upon *Crawford*'s and *Melendez-Diaz*'s rationales. *Bullcoming*, 131 S. Ct. at 2713-14, 2716-17; *Melendez-Diaz*, 557 U.S. at 310-11. Furthermore, in his direct appeal, Hacheney challenged the admissibility of Weiss's report under previous confrontation clause jurisprudence, namely, *Crawford*. *Hacheney* I, 2005 WL 1847160, at *9-10, 2005 Wash. App. LEXIS 1940, at *34-35. Thus, the *Markel* court's rationales barring retroactive application of *Crawford* on collateral review apply with greater force to *Crawford*'s progeny, *Bullcoming* and *Melendez-Diaz*.

¶30 In sum, for us to reexamine Hacheney's confrontation clause challenge on collateral review, Hacheney must

demonstrate a change in law.[11] We hold that Hacheney has demonstrated a change in law and a new rule of criminal procedure regarding the out-of-court statements in Weiss's report. But that rule cannot be applied by us retroactively in this collateral attack on Hacheney's conviction unless it constitutes a " 'watershed rule,' " a class of rules from which " 'it is unlikely that any . . . ha[s] yet to emerge.' " *Markel*, 154 Wn.2d at 269 (alterations in original) (internal quotation marks omitted) (quoting *Summerlin*, 542 U.S. at 352). Thus, our corollary holding is that the "watershed rule" constitutes a barrier to collateral attack based on new rules of criminal procedure, including the right to subject Weiss, whose report the State used during Hacheney's prosecution, to cross-examination. *Markel*, 154 Wn.2d at 269.

¶31 Therefore, Hacheney cannot show that the change in the law wrought by *Bullcoming* and *Melendez-Diaz* and the resulting criminal procedure rule support a legal finding that we now have a "watershed rule" that allows relief when collaterally attacking a conviction. And here, the admission of Weiss's report and the reliance placed on it by the testifying doctors cannot be reviewed in Hacheney's PRP and we deny Hacheney's request for relief.

■ ¶32 Moreover, were we to assume, without so deciding, that (1) Hacheney's direct appeals were not final[12] before the Supreme Court issued *Melendez-Diaz* and (2) the

---

[11] We note further that RCW 10.73.100(6) allows for collateral relief from judgment based on a "significant change in the law . . . which is material to the conviction . . . and . . . a court, in interpreting a change in the law that lacks express legislative intent regarding retroactive application, determines that sufficient reasons exist to require retroactive application of the changed legal standard." We have applied this statutory language consistent with the United States Supreme Court's retroactivity analysis, although that analysis does not limit the scope of relief we may provide under the statute. *Markel*, 154 Wn.2d at 268 n.1; *see also State v. Abrams*, 163 Wn.2d 277, 291-92, 178 P.3d 1021 (2008); *State v. Evans*, 154 Wn.2d 438, 448-49, 114 P.3d 627 (2005). We find no sufficient reason in this case to depart from the federal analysis and to require retroactive application of this new rule on collateral attack. *Accord Markel*, 154 Wn.2d at 268 n.1.

[12] Under our retroactivity analysis, we may retroactively apply "[a] new rule for the conduct of criminal prosecutions . . . to all cases, state or federal, pending on

admission of the toxicology report violated the confrontation clause under *Melendez-Diaz*, the ultimate result does not change. We review confrontation clause errors for constitutional harmless error. *Jasper*, 174 Wn.2d at 117. Whether such an error is harmless depends on a number of factors, including whether the evidence was cumulative. *Jasper*, 174 Wn.2d at 117; *see also State v. Todd*, 78 Wn.2d 362, 372, 474 P.2d 542 (1970) (the admission of cumulative evidence is not prejudicial error); *State v. Saunders*, 132 Wn. App. 592, 604, 132 P.3d 743 (2006) (admission of "entirely cumulative" evidence was harmless violation of the confrontation clause). Here, the experts properly testified to the bases of their opinions, including the toxicology report's contents. *See State v. Lucas*, 167 Wn. App. 100, 109-10, 271 P.3d 394 (2012). Accordingly, we hold that the report itself was merely cumulative and its admission at trial was harmless.

### D. Status of Confrontation Clause Testimonial Analysis

¶33 We write further to address the general lack of clarity in current confrontation clause jurisprudence were we to consider Hacheney's claim for relief under the confrontation clause in light of the emerging law on the issue. In *Bryant*, the United States Supreme Court considered whether statements given in response to police interrogation during an ongoing emergency were testimonial statements triggering the confrontation clause. 131 S. Ct. at 1166-67. In doing so, it applied the "primary purpose" test:

> "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

direct review or not yet final, with no exception for cases in which the new rule constitutes a clear break from the past." *St. Pierre*, 118 Wn.2d at 326.

*Bryant*, 131 S. Ct. at 1154, 1156 (quoting *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006)).

¶34 In his dissent, Justice Scalia sharply criticized the *Bryant* majority's " 'amorphous, if not entirely subjective' " application of the test:

> Where the prosecution cries "emergency," the admissibility of a statement now turns on "a highly context-dependent inquiry[ ]" into the type of weapon the defendant wielded; the type of crime the defendant committed; the medical condition of the declarant; if the declarant is injured, whether paramedics have arrived on the scene; whether the encounter takes place in an "exposed public area"; whether the encounter appears disorganized; whether the declarant is capable of forming a purpose; whether the police have secured the scene of the crime; the formality of the statement; and finally, whether the statement strikes us as reliable. This is no better than the nine-factor balancing test we rejected in *Crawford*, 541 U.S., at 63, 124 S.Ct. 1354. I do not look forward to resolving conflicts in the future over whether knives and poison are more like guns or fists for [c]onfrontation [c]lause purposes, or whether rape and armed robbery are more like murder or domestic violence.

*Bryant*, 131 S. Ct. at 1175-76 (Scalia, J., dissenting) (citations omitted) (quoting *Crawford*, 541 U.S. at 63). But he then acknowledged, "It can be said, of course, that under *Crawford* analysis of whether a statement is testimonial requires consideration of all the circumstances, and so is also something of a multifactor balancing test." *Bryant*, 131 S. Ct. at 1176 (Scalia, J., dissenting).

¶35 We write out of concern that the *Crawford* test is, at a minimum, "something of a multifactor balancing test" and, at most, an " 'amorphous, if not entirely subjective' " test when applied to autopsy reports and derivative forensic reports offered as evidence in criminal trials. *Bryant*, 131 S. Ct. at 1175-76 (Scalia, J., dissenting) (quoting *Crawford*, 541 U.S. at 63). In *Crawford*, the Supreme Court articulated three formulations of the "core class" of testimonial statements but did not endorse a "comprehensive" definition:

Various formulations of this core class of "testimonial" statements exist: "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," [and] "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

541 U.S. at 51-52, 68 (first alteration in original) (citations and internal quotation marks omitted) (quoting *White v. Illinois*, 502 U.S. 346, 365, 112 S. Ct. 736, 116 L. Ed. 2d 848 (1992)). These formulations are more easily applied to forensic reports in cases such as *Bullcoming* and *Melendez-Diaz*, where the reports were analogous to affidavits, than to Weiss's forensic report. 131 S. Ct. at 2717; 557 U.S. at 310-11.

¶36 Weiss's forensic report does not resemble the reports in *Bullcoming* and *Melendez-Diaz*. Accordingly, were we to reach the merits of Hacheney's claim, we would necessarily apply *Crawford*'s other formulations, i.e., whether the challenged statements "were made under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial," an amorphous and, we suggest, problematic subjective analytic framework. 541 U.S. at 52.

¶37 Hacheney's claim is that Weiss's forensic laboratory report, requested by Kitsap County medical examiner Lacsina, detailing the results of toxicology tests performed by Weiss on blood and tissue samples from Dawn's body, contained testimonial statements that should have been subjected to cross-examination. To evaluate this claim under *Crawford*'s subjective analytic framework, we would likely have to consider many factors, including (1) law enforcement's involvement, if any, in the investigation of Dawn's

death; (2) the nature of law enforcement's involvement; (3) the facts resulting from that investigation; (4) the nature and purpose of the medical examiner's investigation into her death; (5) facts, if any, made available to the medical examiner by law enforcement in the course of the medical examiner's investigation; (6) questions arising from the medical examiner's investigation; (7) the nature and purpose of Weiss's toxicology testing in general, e.g., whether it was normally requested by law enforcement or another state actor and whether the testing was performed pursuant to a statutory duty, as part of a criminal investigation, or both; (8) issues or facts, if any, made available to Weiss by the medical examiner; (9) the results of Weiss's tests; and (10) whether an objective witness in Weiss's position would reasonably believe that her forensic laboratory report would be available for use at a later trial. *See* 541 U.S. at 52; *see also People v. Dendel*, 289 Mich. App. 445, 458-68, 797 N.W.2d 645 (2010) (discussing numerous confrontation clause cases involving forensic reports and holding that statements in analyst's report of glucose tests requested by medical examiner were testimonial); *Cuesta-Rodriguez v. State*, 2010 OK CR 23, ¶ 28-35, 241 P.3d 214, *cert. denied*, 132 S. Ct. 259 (2011) (discussing numerous cases and holding statements in autopsy report were testimonial).

¶38 Under *Crawford*'s analysis, our legal inquiry begins to resemble the old-fashioned game of "telephone," as we must attempt to reconstruct the investigation, chain of custody, and sequence of testing from beginning to end, asking who knew what and when. We would suggest that courts should not be forced to allow a defendant's constitutional right to confront witnesses to be determined by something resembling a game, especially in the context of scientific forensic evidence.

¶39 In *Melendez-Diaz*, the State of Massachusetts argued that the reliability of " 'neutral, scientific testing' " might warrant an exception from the confrontation clause's requirements. 557 U.S. at 317 (quoting *Melendez-Diaz* Br.

of Resp't at 29). The Supreme Court rejected this argument, observing that it is not evident that scientific testing is as neutral or as reliable as the State claimed and illustrating how cross-examination of analysts serves to weed out fraudulent or erroneous analysis. *Melendez-Diaz*, 557 U.S. at 318-21. Given a not uncommon perception of scientific evidence as neutral, reliable, and possibly nigh-infallible, perhaps a more stringent confrontation clause analysis is required for forensic analyses performed at state crime laboratories.

¶40 Furthermore, it may be true that Washington medical examiners perform autopsies and that toxicologists perform requested derivative tests pursuant to their duties under state law. But due to the nature of their duties, i.e., investigating the cause and manner of an individual's death, every autopsy and derivative test has "the potential to lead to criminal prosecution." *State v. Hopkins*, 137 Wn. App. 441, 456, 154 P.3d 250 (2007). And, as in this case, a medical examiner's "investigatory role overlap[s] with and aid[s] law enforcement." *Hopkins*, 137 Wn. App. at 457.

¶41 Here also, we have Hacheney's evidence of problems within the WSP Crime Laboratory, issues that may form the core of cross-examination of a forensic scientist whose report is relied upon by the State. In this instance and others, accordingly, it would seem that an objective witness in the position of a medical examiner investigating a death or an analyst performing tests at the examiner's request would reasonably believe that their statements would be available for use at a later trial, thus satisfying the *Crawford* formulations, even within their limitations. 541 U.S. at 51-52.

¶42 As the Supreme Court stated in *Crawford*, "By replacing categorical constitutional guarantees with open-ended balancing tests, we do violence to [the framers'] design. Vague standards are manipulable." 541 U.S. at

67-68. We suggest that perhaps the better rule would be to subject the authors of any autopsy report or derivative report to confrontation clause requirements for testimonial statements.[13] Such a categorical rule would serve as a bulwark against the "unpardonable vice" of amorphous, multifactor tests with the "demonstrated capacity to admit core testimonial statements that the [c]onfrontation [c]lause plainly meant to exclude." *Crawford*, 541 U.S. at 63.

¶43 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, A.C.J., concurs.

¶44 PENOYAR, J. (concurring) — I write separately only in relation to our dicta on the confrontation clause. I agree with the majority's conclusion that exactly what is "testimonial" is far from clear, and I find the majority's discussion of how that issue might be clarified to be very insightful and persuasive. But, in recent years, I have been surprised enough by developments in this area of the law that I am not comfortable saying where this boat might be headed.

---

[13] Such a rule would be preferable even in cases where *Bryant*'s " 'primary purpose' " test may apply to the admissibility of autopsy reports and other derivative forensic reports. 131 S. Ct. at 1154 (quoting *Davis*, 547 U.S. at 822). Both the United States Supreme Court and our Supreme Court have noted that this test applies in the context of police interrogations. *Davis*, 547 U.S. at 822; *State v. Beadle*, 173 Wn.2d 97, 108-10, 265 P.3d 863 (2011). The United States Supreme Court has suggested that a police request for a forensic report is similar to a police interrogation and, according to some of the Court's members, warrants application of the primary purpose test. *See Bullcoming*, 131 S. Ct. at 2714 n.6, 2717 (majority opinion), 2720-21 (Sotomayor, J., concurring in part); *Melendez-Diaz*, 557 U.S. at 316-17. Although the record reflects no police request for Dawn's autopsy or derivative tests, application of the amorphous primary purpose test in this and other cases would suffer the same failings as *Crawford*'s formulations. *See Bryant*, 131 S. Ct. at 1175-76 (Scalia, J., dissenting).