FILED

March 22, 2016

In the Office of the Clerk of Court
WA State Court of Appeals, Division III

COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of | ) No. 33246-2-III<br>)<br>)<br>) |
| ROBERT MARTINEZ, JR., | ) UNPUBLISHED OPINION<br>) |
| Petitioner. | ) |

LAWRENCE-BERREY, J. — Robert Martinez seeks relief from personal restraint imposed following his 2012 convictions for second degree rape, fourth degree assault, and unlawful imprisonment. This court affirmed the convictions in an unpublished opinion. *See State v. Martinez*, noted at 178 Wn. App. 1033, 2013 WL 6843955. This is his first personal restraint petition following this court's opinion affirming his conviction and is timely.

Mr. Martinez raises three grounds for relief, but ultimately fails to demonstrate prejudice to merit relief on collateral review. The petition is therefore dismissed.

FACTS

Mr. Martinez and P.H. started a relationship in 2003. Mr. Martinez was incarcerated from the fall of 2008 until May 12, 2010. On May 14, 2010, P.H. hosted a

barbeque for Mr. Martinez's birthday during which Mr. Martinez became intoxicated and

angry with P.H. for not keeping in better contact with him while he was in prison. Mr.

Martinez left P.H.'s house, but later returned. He pushed his way into her house.

According to P.H., Mr. Martinez wanted to have sex, but she did not. Mr. Martinez

grabbed P.H. by her hair and dragged her into a bedroom where he raped her anally.

P.H.'s friend, Amber Grimm, knocked on the door. P.H. wrapped herself in a

blanket and answered the door. Ms. Grimm observed a bruise on P.H.'s forehead and red

marks around her neck. P.H. appeared "very, very frantic." Report of Proceedings (RP)

at 313.[1] Ms. Grimm asked P.H. to step out on the porch with her to have a cigarette.

After a few minutes, the women went inside and sat on the couch. P.H. then whispered

to Ms. Grimm that Mr. Martinez just raped her. Mr. Martinez then approached the

women and stated he "fucked up." RP at 260. He went into the kitchen and grabbed a

knife and threatened to kill himself. Mr. Martinez finally left and P.H. went to the

hospital.

P.H. told hospital personnel she had been raped. Clarkston Police Officer Jeremy

Foss was dispatched to the hospital to investigate. When he walked into the hospital

room, Officer Foss observed P.H. had multiple red marks and small scratches around her

---

[1] Unless otherwise stated, all record cites refer to the record from the direct appeal, COA No. 30732-8-III.

2

upper chest and on her throat area, a bruise with a bleeding scratch on her forehead, and some bruising on her arms.

In a pretrial motion pertaining to RCW 9A.44.020, the rape shield statute, the court barred "the admission of, or allusions to any prior consensual sexual activities involving the alleged victim . . . and any other person." Clerk's Papers (CP) at 209.

Dr. Michael Lin, a deoxyribonucleic acid (DNA) analyst testified that Mr. Martinez's DNA was found on P.H.'s anal swab extracts. Dr. Lin also found DNA matching Joe Villarreal. This evidence was excluded from the jury under the rape shield law.

Mr. Martinez testified in his defense, claiming the sex was consensual. The trial court instructed the jury that "[t]he Defendant has the burden of proving that the sexual intercourse was consensual by a preponderance of the evidence. Preponderance of the evidence means that you must be persuaded, considering all of the evidence in the case, that it is more probably true than not true." CP at 231.

The jury found Mr. Martinez guilty of second degree rape, fourth degree assault, and unlawful imprisonment. The court imposed a life sentence without the possibility of parole under Washington's Persistent Offender Accountability Act of the Sentencing Reform Act of 1981, chapter 9.94A RCW.

The chief judge referred this case to a panel for an evaluation on the merits based on a determination that at least one of the issues—whether the rape conviction should be reversed due to an erroneous consent instruction—was not frivolous.

## ANALYSIS

When considering a timely personal restraint petition, we may grant relief only if the petitioner is under an unlawful restraint, as defined by RAP 16.4(c). Additionally, to obtain relief on collateral review based on constitutional error, the petitioner must demonstrate by a preponderance of the evidence that he was actually and substantially prejudiced by the error. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004).

A petitioner may not renew an issue "raised and rejected on direct appeal unless the interests of justice require relitigation of the issue." *Id.* at 671. Reexamination of an issue serves the interests of justice if there was "an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior application." *Id.* at 671 n.15. A petitioner may not avoid this requirement "merely by supporting a previous ground for relief with different factual allegations or with different legal arguments." *Id.*

### Rape Shield Statute

Mr. Martinez first challenges the trial court's exclusion of evidence of P.H.'s prior consensual sexual activity with Mr. Martinez and Mr. Villareal under the rape shield

4

statute. Mr. Martinez acknowledges that this court previously addressed and rejected his rape shield argument, but argues that *State v. W.R.*, 181 Wn.2d 757, 771, 336 P.3d 1134 (2014), which held that the State cannot shift the burden of proof for consent in rape cases to the defendant, constitutes an intervening change in the law that requires re-examination of the issue. Mr. Martinez maintains that *W.R.* changed the law on consent, and that evidence of P.H.'s prior consensual sex with Mr. Martinez and Mr. Villareal was relevant to P.H.'s motive to falsely accuse Mr. Martinez of rape. Mr. Martinez argues, as he did in his direct appeal, that the court's ruling deprived him of his constitutional right to fully present his defense.

Mr. Martinez's revision of this argument ultimately fails to explain how a failure to instruct the jury of the State's burden of disproving consent under *W.R.* has any bearing on whether the trial court properly excluded evidence under the rape shield statute. Moreover, his argument overlooks the fact that despite the trial court's ruling, P.H. testified that she had consensual sex with Mr. Martinez the night before the rape. As such, Mr. Martinez makes no showing that the interests of justice require us to revisit the issue. His argument does no more than rehash points previously raised in his direct appeal.

### *Ineffective Assistance of Counsel*

Mr. Martinez next claims that he received ineffective representation when defense counsel failed to obtain its own DNA expert to emphasize that the DNA evidence had no probative value. We reject this argument.

To prevail on an ineffective assistance claim, a petitioner must prove that (1) counsel's performance was deficient, and (2) the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "[I]f a personal restraint petitioner makes a successful ineffective assistance of counsel claim, he has necessarily met his burden to show actual and substantial prejudice." *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

The first prong requires a showing that counsel's performance fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The second prong requires the appellant to show by a "reasonable probability" that but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Generally, "the decision whether to call a particular witness *is a matter for difference of opinion* and therefore presumed to be a matter of legitimate trial tactics." *Davis*, 152 Wn.2d at 742 (emphasis added). The decision not to call an expert whose

6

testimony would likely have been redundant is not ineffective assistance of counsel. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 700-01, 327 P.3d 660 (2014).

Mr. Martinez's argument fails for at least three reasons. First, Mr. Martinez overlooks the fact that Dr. Lin had already explained the relative insignificance of the DNA evidence. Dr. Lin explained that Mr. Martinez was a "potential contributor" of DNA and that "the profile matching Robert Martinez would not be expected to occur more frequently than one in five hundred male individuals." RP at 476. Dr. Lin stated that this was not a "phenomenal number." RP at 476. Mr. Martinez's speculation that a defense expert would have disputed Dr. Lin's findings does not establish deficient performance.

Second, because the trial court excluded evidence of Mr. Villareal's DNA, a defense expert would not have been permitted to testify about this part of the DNA evidence. Finally, because Mr. Martinez's defense was consent, there was no strategic purpose in challenging the DNA evidence. The failure to call an expert whose testimony does not support the actual defense theory does not constitute ineffective assistance of counsel. *See State v. Mannering*, 150 Wn.2d 277, 287, 75 P.3d 961 (2003). Ultimately, Mr. Martinez's speculation that another expert might have been helpful does not meet the standard for personal restraint petitions. *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 473, 965 P.2d 593 (1998).

7

### *Instructional Error under* W.R.

Mr. Martinez's final asserted ground for relief is that the trial court gave a constitutionally infirm instruction that improperly allocated the burden of proving consent to the defense. He argues there is "no greater actual and substantial prejudice to a petitioner than to be convicted of a crime where the State is not required to prove every element of the offense beyond a reasonable doubt." Pet'r's Reply Br. at 4. Mr. Martinez asks us to reverse and remand with instructions to the trial court to properly instruct the jury under *W.R.*

Under *W.R.*, the State here was relieved of its burden of proving lack of consent beyond a reasonable doubt as part of its proof of the element of forcible compulsion. *See W.R.*, 181 Wn.2d at 768 ("due process prohibits shifting the burden to the defendant to prove consent by a preponderance of the evidence"). The State responds that the burden-shifting rule announced in *W.R.* does not apply retroactively.

Under Washington law, we will not retroactively apply a new rule of criminal procedure on collateral attack unless (1) the new rule places certain conduct beyond the power of the state to proscribe, or (2) the new rule constitutes a "watershed" rule of criminal procedure "implicit in the concept of ordered liberty." *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 326, 823 P.2d 492 (1992) (applying the standard set forth in *Teague v. Lane*, 489 U.S. 288, 311, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989)).

The second prong is reserved for only a "small set of watershed rules of criminal procedure without which the likelihood of an accurate conviction is seriously diminished." *In re Pers. Restraint of Hacheney*, 169 Wn. App. 1, 15, 288 P.3d 619 (2012) (quoting *Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004)).

Citing *Hall v. Kelso*, 892 F.2d 1541, 1543 (11th Cir. 1990), Mr. Martinez urges us to apply the *W.R.* rule retroactively, arguing that the rule goes to an element of the crime—forcible compulsion—and therefore diminishes the accuracy of the jury's verdict. *See Kelso*, 892 F.2d at 1543 (noting that a burden-shifting error is subject to retroactive correction on collateral review because such an error "diminishes the likelihood of an accurate conviction") (quoting *Teague*, 489 U.S. at 290).

While Mr. Martinez makes a strong argument for retroactive application of *W.R.*, we decline to reach the issue because he fails to meet the high burden of establishing actual and substantial prejudice required on collateral attack. *In re Pers. Restraint of Gentry*, 179 Wn.2d 614, 630, 316 P.3d 1020 (2014).

Mr. Martinez contends he has made the requisite showing, arguing the *W.R.* court "recognized the actual and substantial prejudice by the error when it determined the remedy was remand for a new trial with the proper allocation of the burdens of proof." Pet'r's Reply Br. at 5. But his argument misconceives *W.R.*'s holding. *W.R.* applied the standard of prejudice in a direct appeal, noting that the State must prove the harmlessness

9

of the error. *See W.R.*, 181 Wn.2d at 770. A petitioner on collateral review, however,

has a higher burden that "is met only where, in light of the essential purpose of the

constitutional right at issue, a violation would necessarily prejudice the defendant." *In re

Pers. Restraint of Coggin*, 182 Wn.2d 115, 120, 340 P.3d 810 (2014).

Washington courts have applied this standard even where a subsequent change in

the law has held a particular jury instruction to be unconstitutional and the error impacts

the trial's truth-finding function. *In re Pers. Restraint of Haverty*, 101 Wn.2d 498, 503-

04, 681 P.2d 835 (1984). A petitioner must establish actual prejudice even for structural

error, which in a direct appeal would require reversal without a showing of prejudice.

*Coggin*, 182 Wn.2d at 120.

We evaluate "actual prejudice" in light of the totality of the circumstances. *In re

Pers. Restraint of Music*, 104 Wn.2d 189, 191, 704 P.2d 144 (1985). Under this standard

a defendant does not necessarily have to prove that he would have been acquitted but for

the error; rather, we find prejudice "if there is a reasonable probability that the error

affected the trial's outcome and the error undermines the court's confidence in the trial's

fairness." *In re Pers. Restraint of Sims*, 118 Wn. App. 471, 477, 73 P.3d 398 (2003).

The ultimate question in determining whether actual prejudice exists is whether

the error "so infected petitioner's entire trial that the resulting conviction violates due

process." *Music*, 104 Wn.2d at 191. Although the barrier to relief is greater than on

10

direct appeal, we will reverse if we have a "grave doubt as to the harmlessness of an error." *In re Pers. Restraint of Smith*, 117 Wn. App. 846, 860, 73 P.3d 386 (2003).

We harbor no grave doubts as to the harmlessness of the alleged error here. This is not simply a "he-said, she-said" case where the only evidence of the crime comes from the two participants. A responding police officer noticed that P.H. had multiple small red marks and scratches on her upper chest and throat, a bruise with a bleeding scratch on her forehead, and bruising on her arms. After the rape, Mr. Martinez absconded to California where he was apprehended and returned to Asotin County. Ms. Grimm testified that Mr. Martinez admitted to her that he raped P.H. and wished to kill himself. Doug Wassmuth, an acquaintance, testified that Mr. Martinez told him that he had "fucked up" and that he deserved to have his "ass kicked" for what he had done to P.H. RP at 346-47. Mr. Martinez's pastor, Joseph Camas, testified that Mr. Martinez admitted to beating up P.H. Mr. Martinez also made incriminating statements on his MySpace page, including "God forgive me for what I have done." RP at 431.

Although Mr. Martinez claimed P.H.'s bruises were caused by defending himself against P.H.'s attack on him with a frying pan, other evidence undermined this testimony. Upon questioning, Mr. Camas testified that Mr. Martinez did not mention anything about P.H. attacking him the night of the rape. Furthermore, the State impeached Mr. Martinez's testimony with evidence that he told an Eastern State Hospital evaluator that

11

he had little to no recollection of the events of May 14 because he had taken a pill. He also failed to tell the Eastern State evaluator that P.H. attacked him with a frying pan.

Viewing the totality of the circumstances, Mr. Martinez fails to meet the high burden of establishing actual and substantial prejudice. In light of his incriminating statements, expressions of remorse and guilt in the immediate aftermath of the rape, his flight, and his contradictory testimony, he has not shown a reasonable probability that the consent instruction affected the outcome of the trial. Admittedly, "creating a reasonable doubt for the defense is far easier than proving the defense by a preponderance of the evidence." *See W.R.*, 181 Wn.2d at 770. But on this record, we harbor no doubt that Mr. Martinez received a fair trial. Accordingly, we dismiss his petition.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey , J.

Siddoway, C.J.

Pennell, J.

12