

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE  OCT 3 0 2014

~~Mat Clagen  C.O~~

CHIEF JUSTICE

This opinion was filed for record
at 8:00AM on Oct. 30, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                    Respondent,

        v.

W.R., JR.,

                    Petitioner.

NO. 88341-6

EN BANC

Filed    OCT 3 0 2014

STEPHENS, J.—This case asks us to reconsider whether it violates due process to assign a defendant the burden of proving consent as a defense to a charge of rape by forcible compulsion. We held in *State v. Camara*, 113 Wn.2d 631, 639-40, 781 P.2d 483 (1989), and reaffirmed in *State v. Gregory*, 158 Wn.2d 759, 801-04, 147 P.3d 1201 (2006), that notwithstanding the "conceptual overlap" between consent and forcible compulsion, the defendant may be tasked with proving consent by a preponderance of the evidence. Recently, we were asked to consider this issue a third time but we declined to reach it, instead resolving the case on Sixth Amendment grounds. *State v. Lynch*, 178 Wn.2d 487, 309 P.3d 482 (2013); U.S. CONST. amend. VI. Three justices would have reached the issue and overruled *Camara* and *Gregory*. *Id.* at 518 (Gordon

McCloud, J., concurring). Today, we embrace that approach and reject the due process precedent set in *Camara* and *Gregory* as both incorrect and harmful. We reverse W.R.'s conviction and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

Following a bench trial, the juvenile court found W.R. committed rape in the second degree under RCW 9A.44.050(1)(a). The event in question was a sexual encounter between W.R. and J.F. that occurred on January 2, 2011, while J.F. was visiting her aunt, who resided with W.R. and his sister. Both W.R. and J.F. were minors at the time.

Throughout the police investigation, W.R. consistently denied ever having sexual intercourse with J.F. Shortly before trial, he admitted that they had engaged in sexual intercourse on January 2, 2011, but defended it as consensual. Tr. of Adjudicatory Hr'g (TAH) (June 16, 2011) at 155-62. To support his defense, W.R. testified that J.F. had a crush on him and that the two had engaged in sexual intercourse on a prior occasion in July 2010. *Id.* at 146. J.F. initially denied ever having sex with W.R. before the January incident. TAH (June 15, 2011 Morning Session) at 78-79. At trial, however, she admitted to having sex with W.R. on both occasions but insisted she did not consent to either. *Id.* at 81-84. Although W.R.'s sister did not witness the alleged rape, she was in the vicinity when it occurred and testified that J.F. had a crush on W.R. TAH (June 16, 2011) at 72, 86-87.

At the close of the bench trial, Judge Gregory P. Canova observed that "the key issue . . . is credibility." TAH (June 21, 2011) at 110. The court did not find W.R.'s

and his sister's testimony to be credible, noting W.R.'s evasive responses to questions and inconsistent story, *id.* at 121-24, and his sister's uncorroborated story and cavalier demeanor at trial, *id.* at 111-16. The court found J.F.'s testimony to be credible, *id.* at 116-21, and concluded W.R. committed rape in the second degree by forcible compulsion. The court explained that the State had proved rape in the second degree beyond a reasonable doubt and that W.R. had failed to prove the defense of consent by a preponderance of the evidence. *Id.* at 124; Clerk's Papers (CP) at 50.

W.R. appealed, arguing the juvenile court erred in allocating to him the burden of proving by a preponderance of the evidence that the act was consensual. W.R. conceded the allocation was consistent with our prior decisions in *Camara* and *Gregory* but argued these decisions were based on a flawed reading of United States Supreme Court precedent and violated his due process rights. Division One of the Court of Appeals affirmed in a brief, unpublished per curiam opinion, noting it was bound by our decisions in *Camara* and *Gregory*. *State v. W.R.*, noted at 171 Wn. App. 1019 (2012). We granted review. *State v. W.R.*, 179 Wn.2d 1001, 315 P.3d 531 (2013).

## ISSUE

When the State charges the defendant under a rape statute that includes "forcible compulsion" as a necessary element of the crime, does due process forbid requiring a criminal defendant to prove consent by a preponderance of the evidence?

## ANALYSIS

The due process clause of the Fourteenth Amendment guarantees, "No state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S.

-3-

CONST. amend. XIV, § 1.[1] The United States Supreme Court has interpreted this due process guaranty as requiring the State to prove "beyond a reasonable doubt . . . every fact necessary to constitute the crime with which [a defendant] is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). A corollary rule is that the State cannot require the defendant to disprove any fact that constitutes the crime charged.

Due process does not require the State to disprove every possible fact that would mitigate or excuse the defendant's culpability. *Smith v. United States*, ___ U.S. ___, 133 S. Ct. 714, 184 L. Ed. 2d 570 (2013); *Patterson v. New York*, 432 U.S. 197, 207, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977). The legislature does not violate a defendant's due process rights when it allocates to the defendant the burden of proving an affirmative defense when the defense merely "'excuses[s] conduct that would otherwise be punishable.'" *Smith*, 133 S. Ct. at 719 (alteration in original) (quoting *Dixon v. United States*, 548 U.S. 1, 6, 126 S. Ct. 2437, 165 L. Ed. 2d 299 (2006)); *see also Martin v. Ohio*, 480 U.S. 228, 107 S. Ct. 1098, 94 L. Ed. 2d 267 (1987). But when a defense necessarily negates an element of an offense, it is *not* a true affirmative defense, and the legislature may not allocate to the defendant the burden of proving the defense. *State v. Fry*, 168 Wn.2d 1, 7, 228 P.3d 1 (2010) (explaining that "[a]n affirmative defense admits the defendant committed a criminal act but pleads an excuse for doing so"; it "does not negate any elements of the charged crime"); *Mullaney v. Wilbur*, 421 U.S.

---

[1] Our state constitution similarly guarantees, "No person shall be deprived of life, liberty, or property, without due process of law." CONST. art. I, § 3. W.R. has not argued that *Camara* and *Gregory* violate our state constitution.

684, 699, 704, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). In such a case, the legislature can only require the defendant to present sufficient evidence to create a reasonable doubt as to his or her guilt. *State v. Riker*, 123 Wn.2d 351, 367-68, 869 P.2d 43 (1994).

W.R. contends the trial court violated his due process rights when it allocated to him the burden of proving consent, which he maintains negates the element of forcible compulsion. Suppl. Br. of Pet'r at 4. We hold that consent negates the element of forcible compulsion. Therefore, once a defendant asserts a consent defense and provides sufficient evidence to support the defense, the State bears the burden of proving lack of consent as part of its proof of the element of forcible compulsion.

1. *Burdening a Defendant with Proving a Defense That Negates an Element of the Crime Charged Violates Due Process*

This court in *Camara* held that in rape prosecutions involving forcible compulsion, the "conceptual overlap" between the defense of consent and the element of forcible compulsion does not forbid imposing on the defendant the burden to prove consent by a preponderance of the evidence. 113 Wn.2d at 638-40. Unfortunately, we came to this conclusion without applying the "'negates'" analysis. *Id.* at 639. When we decided *Camara* we were skeptical of the viability of this analysis following the United States Supreme Court's decision in *Martin*. *Id.* at 640. We interpreted *Martin* to mean that requiring a defendant to prove a defense by a preponderance of the evidence is "not precluded by the fact that the defense 'negates' an element of a crime." *Id.*

This reading of *Martin* failed to appreciate that the United States Supreme Court's holding in that case was limited. The Court held that due process does not forbid placing the burden of proving self-defense on the defendant charged with the crime of aggravated murder. 480 U.S. at 233. In so holding, the Court acknowledged that while self-defense "*may* negate" the mens rea of "purposeful killing by prior calculation and design" in "*most* encounters," it does not impermissibly shift the burden of proving a purposeful killing because self-defense merely excuses a killing that would otherwise constitute aggravated murder in Ohio. *Id.* at 234 (emphasis added). In other words, the Court found that a purposeful killing could coexist with self-defense, so the presence of self-defense does not necessarily negate a finding of purposeful killing.

*Smith* subsequently clarified that the prosecution must always bear the burden of disproving a defense that necessarily negates an element of the charged offense. 133 S. Ct. at 719. The Court explained:

> The State is foreclosed from shifting the burden of proof to the defendant only "when an affirmative defense *does* negate an element of the crime." Where instead it "excuse[s] conduct that would otherwise be punishable," but "does not controvert any of the elements of the offense itself," the Government has no constitutional duty to overcome the defense beyond a reasonable doubt.

*Id.* (alteration in original) (quoting *Martin*, 480 U.S. at 237 (Powell, J., dissenting); *Dixon*, 548 U.S. at 6). Read together, *Martin* and *Smith* hold that the State may burden a defendant with proving an affirmative defense that excuses otherwise criminal conduct even when the defense overlaps one of the elements under most circumstances, but the State may not burden a defendant with proving a defense that necessarily negates

-6-

an element of the charged offense. Thus, the propriety of the negates analysis is no longer in doubt.

Since *Martin*, we have applied the negates analysis to a variety of defenses. *See, e.g., State v. Deer*, 175 Wn.2d 725, 734, 287 P.3d 539 (2012) (lack of volition does not negate any element of third degree rape of a child); *Riker*, 123 Wn.2d at 368 (duress defense does not negate an element of delivery and possession of cocaine); *State v. Box*, 109 Wn.2d 320, 330, 745 P.2d 23 (1987) (insanity does not negate an element of first degree murder). In fact, we implicitly applied the negates analysis in *Gregory*, albeit incorrectly, to affirm *Camara*'s holding. *See Gregory*, 158 Wn.2d at 803-04 (relying on *Riker* for proposition that consent does not negate an element of rape by forcible compulsion), 803 n.21 (explaining its holding was not inconsistent with the negates analysis applied in *Dixon*, 548 U.S. 1).

We hold that when a defense necessarily negates an element of the crime, it violates due process to place the burden of proof on the defendant. The key to whether a defense necessarily negates an element is whether the completed crime and the defense can coexist.

2. *Consent Necessarily Negates the Element of "Forcible Compulsion"*

Although the State agrees that the negates analysis remains at the center of the due process issue, it argues our decisions in *Camara* and *Gregory* were nevertheless correct because consent does not necessarily negate the element of forcible compulsion. If consent does not always negate forcible compulsion, it would not offend due process to require W.R. to prove consent by a preponderance of the evidence. The State

acknowledges that "consent will 'often tend to negate' forcible compulsion" but argues "the overlap is not complete." State's Suppl. Br. at 14, 16; *see also* Br. of Amicus Curiae Wash. Ass'n of Prosecuting Atty's at 6. The proffered hypotheticals do not convince us.

The statute defines "forcible compulsion" as "physical force which *overcomes resistance*, or a threat . . . that *places a person in fear of death or physical injury* to herself or himself or another person, or in fear that she or he or another person will be kidnapped." RCW 9A.44.010(6) (emphasis added). As defined, forcible compulsion contemplates force that overcomes actual resistance or threats that place a person in actual fear. There can be no forcible compulsion when the victim consents, as there is no resistance to overcome. Nor is there actual fear of death, physical injury, or kidnapping when the victim consents.

Other courts have recognized that when a person consents to sexual intercourse, such consent negates forcible compulsion. Examining the crime of rape by forcible compulsion in Washington, the Ninth Circuit noted in dicta that "consent appears to negate the element of 'forcible compulsion' rather than provide an excuse (i.e., affirmative defense) for admitted illegal conduct" and, therefore, "the State's requirement-that [the defendant] demonstrate that consent did in fact exist-seems to violate his constitutional right to due process." *Spicer v. Gregoire*, 194 F.3d 1006, 1008 (9th Cir. 1999).[2] Michigan courts have similarly found consent to negate the element

---

[2] In *Gregory*, we dismissed *Spicer* as dicta. 158 Wn.2d at 804 n.22. While the court was correct that the decision in *Spicer* ultimately avoided the constitutional question, the Ninth Circuit expressly disagreed with *Camara*.

of forcible compulsion in their rape laws, upon which Washington relied heavily in drafting its rape laws. *Lynch,* 178 Wn.2d at 516-17 (Gordon McCloud, J., concurring) (quoting *People v. Waltonen,* 272 Mich. App. 678, 728 N.W.2d 881, 887 (2006)). In Michigan, the prosecution must disprove consent beyond a reasonable doubt wherever the defendant produces sufficient evidence to put the issue in controversy. *See People v. Thompson,* 117 Mich. App. 522, 324 N.W.2d 22, 24-25 (1982). This same rule must apply in Washington.

Requiring a defendant to do more than raise a reasonable doubt is inconsistent with due process principles. As we explained in *Riker,* when a defense negates an element of the crime, the State can require the defendant to prove that defense only to the extent of creating a reasonable doubt as to his or her guilt. 123 Wn.2d at 367. Because the defense of consent necessarily negates the element of forcible compulsion, credible evidence of consent necessarily raises doubt as to the defendant's guilt. As such, the defense of consent should be treated similar to the alibi defense at issue in *Riker* in that the defendant need only produce sufficient evidence to create a reasonable doubt as to the victim's consent. The defendant cannot be burdened with proving consent by a preponderance of the evidence, as the burden must remain on the State to prove forcible compulsion beyond reasonable doubt. *See Smith,* 133 S. Ct. at 719.

Recognizing that the State's burden to prove forcible compulsion encompasses the concept of nonconsent is consistent with rape reform laws. LAWS OF 1975, 1st Ex. Sess., ch. 14. The dissent complains that our decision reverses the progress made in shifting the focus of rape prosecutions away from the victim's conduct and onto the

defendant's. Dissent at 2. It does not. As Professor Loh explained in a leading law review article discussed in *Camara*, the new law "focuses more on the actor's use or threat of force rather than the victim's conduct as the external criterion of nonconsent." Wallace D. Loh, *The Impact of Common Law and Reform Rape Statutes on Prosecution: An Empirical Study*, 55 WASH. L. REV. 543, 550 (1980); 113 Wn.2d at 637. Washington and "[m]odern statutory and decisional law do not treat force and nonconsent as separate formal elements." *Id.* at 552 n.43. Rather, force is an objective indicator of nonconsent. *Id.*; *see also* Helen Glenn Tutt, *Washington's Attempt To View Sexual Assault as More Than a "Violation" of the Moral Woman—The Revision of the Rape Laws*, 11 GONZ. L. REV. 145, 156 (1975). The court in *Camara* rejected the argument that rape law reforms "eliminated consent as an issue in rape prosecutions." 113 Wn.2d at 637 n.3. While the State agrees, the dissent insists that rape law reformers removed the element of nonconsent from the forcible rape statutes. Dissent at 3. But, as the court in *Camara* explained, the shift in focus to "forcible compulsion" was "more a refinement than a reformulation." 113 Wn.2d at 637 n.3. It remains that a person is not guilty of rape if the sexual intercourse is consensual. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.25, at 288-89 (3d ed. 2008).[3]

We hold that consent necessarily negates forcible compulsion. For this reason, due process prohibits shifting the burden to the defendant to prove consent by a preponderance of the evidence. While the defendant may be tasked with producing

---

[3] Because the focus is on forcible compulsion, jury instructions need only require the State to prove the elements of the crime. It is not necessary to add a new instruction on consent simply because evidence of consent is produced.

evidence to put consent in issue, such evidence need only create reasonable doubt as to the victim's consent. Our prior decisions in *Camara* and *Gregory* are inconsistent with this holding; we thus must explain why these cases must be overruled.

### 3. Gregory *and* Camara *are Incorrect and Harmful*

The principle of stare decisis is vital to protecting the rights of litigants and the integrity of the common law. *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 278, 208 P.3d 1092 (2009). We will overrule a prior decision only upon a clear showing that the rule it announced is incorrect and harmful. *State v. Barber*, 170 Wn.2d 854, 863-65, 248 P.3d 494 (2011) (explaining standard for overruling precedent). A rule can become incorrect when subsequent United States Supreme Court precedent clarifies that our prior understanding was erroneous. *State v. Abdulle*, 174 Wn.2d 411, 420, 275 P.3d 1113 (2012).

As our analysis above makes clear, *Camara* and *Gregory* are incorrect. They misapprehend United States Supreme Court precedent and misdescribe the relationship between forcible compulsion and nonconsent. In *Camara* we concluded that consent is the "conceptual opposite" of forcible compulsion. 113 Wn.2d at 637. *Gregory* further held that this merely means there is "conceptual overlap between the consent defense and the forcible compulsion element," 158 Wn.2d at 803; *see also Camara*, 113 Wn.2d at 640. But neither case explains how two things can be conceptual opposites without negating one another. This conclusion is untenable because no circumstance could exist where a defendant forcibly compels a victim to engage in consensual sexual intercourse.

-11-

*Gregory*'s faulty reasoning circuitously relied on our decision in *Riker*. 158 Wn.2d at 803 (citing the fact that "the *Riker* court included the consent defense to rape in its list of defenses that did *not* negate an element of the crime" as the only evidence for its conclusion that consent does not negate forcible compulsion (emphasis added)). *Riker* simply summarized the holding of *Camara*; it did not independently analyze whether consent negated or overlapped with forcible compulsion. 123 Wn.2d at 366. The *Camara* court did not explain why consent does not negate forcible compulsion even though it considered them to be "conceptual opposite[s]." 113 Wn.2d at 637. Thus, neither *Camara, Riker*, nor *Gregory* provides us with any defensible argument for the conclusion that consent does not negate forcible compulsion.

*Camara* and *Gregory* are also harmful. In violation of a defendant's due process right to have the State prove every element of the crime beyond a reasonable doubt, the rule in these cases impermissibly shifts the burden to the defendant to negate forcible compulsion by establishing consent. This impermissible shift in burden is not merely academic but risks compartmentalizing forcible compulsion and consent, raising a very real possibility of wrongful convictions. We have found sufficient justification to overrule prior decisions with arguably less harm. *State v. Devin*, 158 Wn.2d 157, 167-68, 142 P.3d 599 (2006) (overruling *State v. Furth*, 82 Wash. 665, 667, 144 P. 907 (1914) because of collateral consequences including depriving crime victims of compensation, causing emotional distress, and impacting family court proceedings); *Abdulle*, 174 Wn.2d at 420 (overruling *State v. Davis*, 73 Wn.2d 271, 438 P.2d 185

(1968) because it kept relevant evidence from the trier of fact). The due process violation created by the rule in *Camara* and *Gregory* is plainly harmful.

We overrule *Camara* and *Gregory* to the extent they hold that consent does not negate forcible compulsion and that a defendant can be required to prove consent by a preponderance of the evidence.

4. *The Remedy Is Remand for a New Trial*

Placing the burden on W.R. to prove consent by a preponderance of the evidence violated his due process rights. Where a constitutional error occurs, reversal is ordinarily the proper remedy unless the State can prove the error was harmless beyond a reasonable doubt. *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). We do not find that the State can satisfy that burden here.

The State argues that the trial judge's credibility determinations formed the basis of his decision and that an "after-the-fact inclusion of the burden of proof [for] consent could not have affected this decision." State's Suppl. Br. at 19. "[I]t is the function of the trial court and not [the appellate] court to consider the credibility of witnesses and to weigh the evidence." *Nissen v. Obde*, 55 Wn.2d 527, 529, 348 P.2d 421 (1960). But, we cannot overlook the fact that the trial judge, in making his credibility determinations, acted within the incorrect framework.

The defense and prosecution both relied on an incorrect understanding of the law when they fashioned and presented their arguments surrounding consent. Creating a reasonable doubt for the defense is far easier than proving the defense by a preponderance of the evidence. And the trial court's express conclusion was that W.R.

did not prove consent. CP at 50. The record does not show any consideration of the interplay between consent and forcible compulsion under the negates analysis, making it impossible for us to conclude beyond a reasonable doubt that a reasonable fact finder would not have been swayed by arguments made using the correct burden of proof. *Id.*

We therefore must remand for a new trial with the proper burden allocations.

## CONCLUSION

When a defense necessarily negates an element of the crime charged, the State may not shift the burden of proving that defense onto the defendant. To hold otherwise unconstitutionally relieves the State of its burden of proving every element of the crime beyond a reasonable doubt. We hold consent necessarily negates forcible compulsion. We overrule *Camara* and *Gregory* to the extent they hold the defendant bears the burden of proving consent by a preponderance of the evidence. We remand for a new trial consistent with this opinion.

_____
Stephens, J.

WE CONCUR:

_____
Madsen, C.J.

_____
Wiggins, J.

_____


_____


_____
González, McCloud, J.

_____
Fairhurst, J.

_____
Kulik, J.P.T.

*State v. W.R., Jr.*

No. 88341-6

OWENS, J. (dissenting) — Prior to 1975, rape was defined as sex "committed against the person's will and without the person's consent." Former RCW 9.79.010 (LAWS OF 1973, 1st Ex. Sess., ch. 154, § 122), *repealed by* LAWS OF 1975, 1st Ex. Sess., ch. 14, § 10. Thus, prior to 1975, the State bore the burden of proving that a rape victim had not consented. *State v. Camara*, 113 Wn.2d 631, 636, 781 P.2d 483 (1989). Under the prior statute, trials focused on the victim's behavior, putting the victim's credibility, reputation, and conduct on trial. As a consequence, many victims chose silence over the trauma of a trial that focused on their actions and character. In short, our rape laws "reflect[ed] male-oriented interests" and resulted in "low rates of reporting, arrest, prosecution, and conviction." Wallace D. Loh, *The Impact of Common Law and Reform Rape Statutes on Prosecution: An Empirical Study*, 55 WASH. L. REV. 543, 570 (1980). In 1975, the legislature wisely chose to revise the law, removing the lack of consent element and instead requiring the State to prove

forcible compulsion on the part of the perpetrator—switching the focus to the *perpetrator's* actions. RCW 9A.44.040(1), .050(1)(a); *Camara*, 113 Wn.2d at 636.

Today, the majority reverses that progress. The majority departs from recent and well-reasoned precedent, retreating to the archaic focus on a rape victim's actions instead of those of the perpetrator. Placing the burden on the State to disprove consent wrongfully puts the victim's actions and reputation on trial. Not only does the majority's decision invalidate years of work undertaken to properly refocus our rape law, but it also has serious implications for victims of an already underreported type of crime. I respectfully dissent.

I disagree with the majority's decision to cast aside our recent precedent. We have analyzed the burden of proof for consent in rape cases twice in the past 25 years. *State v. Gregory*, 158 Wn.2d 759, 801-04, 147 P.3d 1201 (2006); *Camara*, 113 Wn.2d at 637-40. Both times, we concluded that under the current rape laws, the State has the burden of proving forcible compulsion and that consent is an affirmative defense that can be raised and proved by the defendant. *Gregory*, 158 Wn.2d at 801-04; *Camara*, 113 Wn.2d at 637-40. I disagree with the majority's decision to discard this recently confirmed precedent, particularly in light of the decision's real-world consequences for rape victims seeking justice. The majority overlooks the harm that its holding will cause to the victims of rape, who will now face a trial centered around their conduct.

2

As we recognized in *Gregory* and *Camara*, the plain language of the first and second degree rape statutes makes it clear that the legislature decided against requiring the State to prove lack of consent. When interpreting the plain meaning of a statute, we consider related provisions of the statute. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11-12, 43 P.3d 4 (2002). For first and second degree rape, the statutes make no mention of lack of consent. RCW 9A.44.040(1), .050(1)(a). Instead, first and second degree rape are both defined as sexual intercourse "by forcible compulsion." RCW 9A.44.040(1), .050(1)(a). In contrast, the third degree rape statute explicitly requires proof of lack of consent. RCW 9A.44.060(1)(a). Thus, the plain language of the statute indicates that to obtain a conviction for first or second degree rape, the legislature intended that the State prove forcible compulsion beyond a reasonable doubt rather than lack of consent.

The legislature thoughtfully and intentionally made the decision to require the State to prove forcible compulsion rather than lack of consent. As we have previously concluded, the legislature intended to place the burden on the State to prove forcible compulsion—rather than lack of consent—and therefore remove the focus from the victim's conduct. *Camara*, 113 Wn.2d at 638-39. The revised law thus "'announce[d] society's interest in accurately identifying perpetrators of rape, not in reinforcing traditional assumptions regarding appropriate behavior of [virtuous] [men and] women.'" *Id.* at 639 (second and third alterations in original) (quoting Loh,

3

*supra*, at 557). By placing the burden on the State to prove lack of consent—despite the legislature's decision to the contrary—the majority's decision will shift the focus back to the actions of the victim.

This shift in focus has troubling implications. As noted above, the former, victimcentric statutes resulted in "low rates of reporting, arrest, prosecution, and conviction." Loh, *supra*, at 570. If victims believe that the trial will focus on their behavior rather than the perpetrator's actions, they will be less likely to report the rape. If they do report the rape, they may feel that they themselves are on trial when the focus shifts to their actions rather than the crime against them. I agree with the concerns expressed by amici curiae that the majority's decision may "open the door for defendants to emphasize rape myths and victim-blaming," making it even more difficult for sexual assault victims to receive justice. Br. of Amicus Curiae Wash. Coal. of Sexual Assault Programs, King County Sexual Assault Resource Center, Legal Voice, and Sexual Violence Law Center at 2. Given these unjust societal consequences, I cannot agree with the majority's decision.

In 1975, the legislature took an important step toward justice for rape victims when it modified the laws to focus on the conduct of the perpetrator and not the victim. Unfortunately, today's decision by the majority reverses that progress. I respectfully dissent.

Owens, J.

Gonzáles, J.