
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON, )
                             )
          Respondent, )
                             )
          v. )
                             )
CHRISTOPHER T. NOLEN, )
                             )
          Appellant. )
                             )

No. 75677-0-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: April 16, 2018

APPELWICK, J. — Nolen was convicted of three counts of first degree child molestation for acts against his daughter. The trial court allowed victim impact evidence and testimony that Nolen's mother had tried to intimidate the victim's mother. Nolen argues that the trial court abused its discretion, asserting that in both cases the prejudicial effect outweighed the probative value. He also claims the prosecutor made an impermissible comment on the credibility of the complaining witness during closing argument. We find no error on these issues. Finally, Nolen challenges conditions of community custody, arguing that they are unauthorized and not reasonably related to his offenses. We accept the State's concession that two conditions are not related to the crimes and must be stricken or clarified. We affirm in part, reverse in part, and remand.

## FACTS

Around 2004, Christopher Nolen and his then wife, Tina Nolen, moved to Arlington, Washington with their two children.[1] Their daughter, A.N., who was about eight, and younger son, C.N., went to the Boys and Girls Club after school while their parents worked. The Nolens separated in 2006 and finalized their divorce in 2009. A.N. remained active with the Boys and Girls Club, and was recognized as Student of the Year when she was a senior in high school. After the recognition ceremony for the award, A.N. told her mother that her father had sexually abused her in the past.

A.N. testified that when Nolen still lived with her, he molested her while she was alone with him in her parents' bedroom. At the time, A.N. was nine or ten. A.N. testified about two other times Nolen molested her in her bedroom. And, after her parents separated, A.N. testified that when she was 14 years old Nolen raped her when they were alone together in a hotel room.

In the amended information, the State charged Nolen with first degree rape of a child (count I), first degree child molestation (counts II-IV), and third degree rape of a child (count V). The jury returned verdicts of not guilty on counts I and V. It convicted the defendant of first degree child molestation as charged in counts II-IV. The court sentenced Nolen to 130 months to life in confinement and imposed community custody conditions. Nolen appeals.

---

[1] Because several witnesses share the same surname, unless otherwise indicated, we use first names for clarity. We refer to the appellant as "Nolen."

2

## DISCUSSION

### I. Admitted Evidence

Nolen argues that the trial court twice abused its discretion in admitting evidence that had a prejudicial effect that outweighed its probative value. First, he contends that the trial court abused its discretion in admitting testimony of how A.N. suffered as a result of Nolen's offenses. Second, he argues that the trial court abused its discretion in allowing the State to ask Nolen's mother about a conversation she had with A.N.'s mother, Tina.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). A court abuses its discretion when its decision is manifestly unreasonable, or based on untenable grounds or reasons. Id.

### A. Victim Impact Evidence

Nolen first argues that evidence of the impact of the alleged abuse on A.N. was not relevant to the issues at trial, and, therefore, the evidence's prejudicial effect outweighed its probative value.

Before trial, Nolen moved to exclude evidence of the impact on A.N. of the alleged abuse. The court denied the motion, balancing the probative value against the prejudice of the evidence on the record:

> The objection was under ER 403. With regard to that, generally the analysis that is supposed to take place is a balancing process, where you balance probative value against prejudice of the evidence. And the burden is on the moving party to show the prejudice. And what you are basically looking at is . . . whether the evidence is designed

to illicit [sic] an emotional response versus a rational response. In other words, the problem is it inflammatory towards the jury? Is it intended to inflame them or confuse them?

In this situation, the impact of the crime on the victim, I don't see how, given what I've heard in terms of offer of proof, how it would be inflammatory at all.

The fact that a person was assaulted and was injured by that and the injury was primarily psychological, it is sort of a common thing to be expected in these types of situations. And I think that the probative value of the evidence outweighs the prejudicial value so far, and so that motion is denied.

Under ER 403, the only question is whether the evidence's probative value is outweighed by its prejudicial effect. Carson v. Fine, 123 Wn.2d 206, 222, 867 P.2d 610 (1994). Unfair prejudice is caused by evidence likely to arouse an emotional response rather than a rational decision among the jurors. Id. at 223.

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. ER 401. Evidence bearing on a witness's credibility is relevant when there has been an attack on her credibility. State v. Bourgeois, 133 Wn.2d 389, 401, 945 P.2d 1120 (1997). Where the State can reasonably anticipate such an attack, it need not wait until after the witness has been cross-examined. Id. at 402. The credibility of a witness often is " 'an inevitable, central issue' " in cases in which the witness is a child victim of sexual molestation. State v. Hakimi, 124 Wn. App. 15, 25, 98 P.3d 809 (2004) (quoting State v. Petrich, 101 Wn.2d 566, 575, 683 P.2d 173 (1984)). Cases involving crimes against children generally put in issue the credibility of the complaining

witness, especially if the defendant denies the acts charged and the child asserts their commission. Id. An attack on the credibility of these witnesses, however slight, may justify corroborating evidence. Id.

Here, the defense's theory of the case, of which it notified the court before trial, was that the alleged abuse was a fabrication. In support of admitting the impact evidence, the State argued,

> [T]he disclosure was a late disclosure. . . . I expect [A.N.] to testify that when she ultimately did disclose it was because it had been having quite an emotional impact on her, and she couldn't keep it in anymore. I think that is certainly relevant, especially considering the defense is that she made it up. I think circumstances surrounding when she did ultimately disclose are key to this case, especially in light of the defense.
>
> She also then has had difficulty talking about it with different people and I think she should be allowed to talk about how hard it is to talk about and what she was feeling at the time when she was having various discussions with various people.
>
> And ultimately she did seek counselors and she saw counselors as a result of this. These are counselors I think [defense counsel] is calling as her own witness.
>
> So all of it is part and parcel of the way this came about, how it's affected her, why she told, who she told, when she told, and how -- how her emotions were significantly affecting those things. So I do think that's relevant.

Nolen argues that A.N.'s testimony about her counseling and the techniques she used to cope with her challenges was inflammatory and invoked undue sympathy, and did not connect to the elements of the offense. He cites to where A.N. testified that she was feeling overwhelmed, and that her second counselor

helped her with methods to overcome her emotions, enabling her to talk about what happened.

Throughout trial, Nolen's defense was that A.N.'s allegations were false. On cross, Nolen called A.N.'s credibility into question, asking why she was now able to remember things that she had previously told a detective she could not remember. Thus, testimony about the impact of the abuse and the techniques she learned from counseling was relevant to why A.N. disclosed more information about the abuse over time. The trial court did not abuse its discretion in allowing testimony of how the abuse affected A.N.

B. Witness Bias Testimony

Second, Nolen argues that the trial court abused its discretion in allowing the State to elicit testimony from Nolen's mother that was overly prejudicial.

Before trial, Nolen moved to exclude testimony that Elizabeth "Kay" Nolen, Nolen's mother, told Tina that she had money and was able to hire a good lawyer. In evaluating the defense's motion, the trial court read from the defense witness list and the accompanying summary of anticipated testimony from Kay. That summary included that "Kay will describe . . . Tina's persistent pleas for money from her." The court noted that since the defense planned on attacking the credibility of another witness by bringing up the money issue, it would be fair to allow the State to inquire into Kay's bias on cross-examination. The trial court denied the motion to exclude Kay's statements.

Although the court did not bar the State from asking Kay if she told Tina that she could hire a good lawyer, the State did not explicitly ask this at trial. Instead, in cross-examination the State asked,

> Q. And didn't you intercede on [Nolen]'s behalf when you tried to manipulate Tina into not supporting this prosecution?
>
> A. Okay.
>
> Is that regarding after we heard about it and that I e-mailed her and asked her why she was doing this, is that what you mean?
>
> Q. You asked her why she was doing it?
>
> A. Uh-hum.
>
> Q. And you said we have money behind our case, did you not?
>
> A. I did.

Nolen asserts that the admitted testimony was irrelevant and a burden on his Sixth Amendment right to counsel. The law allows cross-examination of a witness into matters that will affect credibility by showing bias, ill will, interest, or corruption. State v. Russell, 125 Wn.2d 24, 92, 882 P.2d 747 (1994). The scope of such cross-examination is within the discretion of the trial court. Id. The State may not draw adverse inferences from the exercise of a constitutional right. State v. Gregory, 158 Wn.2d 759, 806, 147 P.3d 1201 (2006) overruled on other grounds by State v. W.R., 181 Wn.2d 757, 336 P.3d 1134 (2014). But, not all arguments touching upon a defendant's constitutional rights are impermissible comments on the exercise of those rights. Id. Where the focus of a prosecutor's question is not

on the right itself, the comment does not violate the defendant's constitutional right at issue. Id. at 807.

Here, after the State asked Kay if she told Tina that she had money behind the case, the State asked, "And you said we are going to bring you down with charges, it's a felony, correct?" The focus of the prosecutor's line of questioning was to show Kay's attempt to intimidate Tina and to establish witness bias. It did not focus on the defendant's right to counsel. The trial court did not abuse its discretion in admitting the testimony.

## II.  Prosecutorial Misconduct

Nolen argues that the prosecutor improperly commented on the credibility of the complaining witness in closing argument, denying him a fair trial.

Prosecutorial misconduct is grounds for reversal only if the prosecutor's conduct was both improper and prejudicial. State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). We evaluate a prosecutor's conduct in the full trial context, including the evidence presented, the total argument, the issues in the case, the evidence addressed in argument, and the jury instructions. Id. It is misconduct for a prosecutor to state a personal belief as to the credibility of a witness. State v. Warren, 165 Wn.2d 17, 30, 195 P.3d 940 (2008). But, a statement is misconduct only if it is a clear and unmistakable expression of a personal opinion. State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995). Otherwise, the prosecutor remains free to argue an inference from the evidence. Id. When there is an

objection, an improper argument is prejudicial if there is a substantial likelihood it affected the verdict. State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

Absent a timely objection, reversal is required only if the conduct is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury. Warren, 165 Wn.2d at 43.

Here, in closing argument, the prosecutor focused on A.N.'s credibility. At one point, about A.N., she stated,

> Ultimately you are here to decide what's reasonable and what's not reasonable, what makes sense, what doesn't make sense, in light of what you heard. . . . [If s]he sat up there and every time she talked about it, she talked about it the same way, used the same words, didn't show any emotion, that would certainly have you wondering, wouldn't it? That would make it clear that she was reciting some sort of script. But that's not what happened here.

Then, she recounted A.N.'s testimony about the incident in her parents' bedroom:

> And he ended up pushing her down onto the bed. . . . And what did he say, I asked her. It's fine, it's fine.
>
> What were you thinking? Well, I didn't understand. I was confused. I thought - - I guess it was okay.
>
> That's scripted? I don't think so.

Nolen argues that the prosecutor improperly vouched for her witness when she asked and answered her own question with " 'That's scripted? I don't think so.' " In Warren, our Supreme Court found that a prosecutor's comment that a witness's statements had a " 'ring of truth' " was not improper. 165 Wn.2d at 30. It found that it was not an explicit statement of personal opinion, and stated that

prosecutors have wide latitude to argue reasonable inferences from the facts concerning witness credibility. Id. Likewise here, the prosecutor's comment was an argued inference about A.N.'s testimony, not a clear and unmistakable expression of a personal opinion.

Even if we had instead concluded the prosecutor's comment was improper, Nolen did not object below. The prosecutor's comment was not so flagrant and ill intentioned that it caused an enduring and resulting prejudice that could not have been neutralized by a curative jury instruction. The comment does not constitute a basis for reversal.[2]

III.  Cumulative Error

Next, Nolen argues that he is entitled to a new trial because during his trial "several critical errors occurred which unfairly prejudiced the jury against him and their cumulative impact affected the outcome of the case."

The cumulative error doctrine is limited to instances when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial. State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).

---

[2] Nolen also identifies another potential error, stating that the "prosecution's use of extraneous allegations of poor parenting further tipped the scales against [Nolen] and his hope for a fair trial." But, he does not provide any citation to the record, nor to any authority that the evidence was erroneously admitted. Therefore we do not review his claim. See State v. C.B., 195 Wn. App. 528, 535, 380 P.3d 626 (2016) (we will not review issues inadequately argued or mentioned only in passing).

Nolen contends that the errors at trial were the admission of two types of prejudicial evidence and an improper comment during the State's closing. We found above that these were not errors, so the cumulative error doctrine does not apply.

IV.     Community Custody Conditions

Finally, Nolen argues that the trial court exceeded its authority by imposing community custody conditions that were not reasonably related to his offenses, overbroad, and vague.

The trial court lacks authority to impose a community custody condition unless authorized by the legislature. State v. Warnock, 174 Wn. App. 608, 611, 299 P.3d 1173 (2013). RCW 9.94A.505(9) provides, "As a part of any sentence, the court may impose and enforce crime-related prohibitions and affirmative conditions as provided in this chapter." Community custody conditions are within the court's discretion and will be reversed only if manifestly unreasonable. State v. Valencia, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010).

Nolen first challenges condition 7, which states, "Do not access the Internet on any computer in any location, unless such access is approved in advance by the supervising Community Corrections Officer and your treatment provider. Any computer to which you have access is subject to search." We accept the State's concession that there is no evidence that using a computer or accessing the internet was related to Nolen's offenses. We remand to the trial court to strike condition 7 based on the lack of the requisite nexus between the crime and the

prohibited activity. See State v. O'Cain, 144 Wn. App. 772, 775, 184 P.3d 1262 (2008) (holding that a prohibition on internet access without preapproval must be crime related).

Nolen next challenges condition 13, requiring him to "[p]articipate in urinalysis, [breath], and polygraph examinations as directed by the supervising Community Corrections Officer, to monitor compliance with conditions of community custody." The State concedes that there was no evidence that alcohol contributed to the circumstances of the offense, and that the part of condition 13 requiring Nolen to participate in breath tests should be stricken.

But, the State argues that requiring Nolen to undergo urinalysis tests is not unlawful. Citing Warnock, Nolen argues that, absent the finding that chemical dependency contributed to his offense, the court lacked authority to order him to submit to tests monitoring substance abuse.

As conditions of his community custody, Nolen was ordered to "not consume controlled substances except pursuant to lawfully issued prescriptions" and to "not unlawfully possess controlled substances while on community custody." This condition was properly issued under RCW 9.94A.703(2)(c), which states that as a condition of community placement the offender shall "refrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions." This condition is required unless the trial court waives it, regardless of the offense committed. RCW 9.94A.703(2). Stemming from this statutory authority, it follows that the trial court has the ability to enforce these conditions.

State v. Vant, 145 Wn. App. 592, 604, 186 P.3d 1149 (2008). As such, the trial court's imposition of random urinalysis tests to ensure compliance with its conditions does not constitute an abuse of discretion. Only the breath examinations must be stricken from condition 13.

We affirm in part and reverse in part, and remand.

WE CONCUR: