# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49592-9-II |
| Respondent, | |
| v. | |
| TYLER MOREY WALLACE, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, A.C.J. — Tyler M. Wallace appeals his second degree assault conviction based on an incident where he slapped Kimberly Nolan and then threatened her with a knife.  Wallace argues he was denied due process because the State failed to prove each element of second degree assault as instructed to the jury.  We affirm.

## FACTS

Wallace and Nolan lived together with their son and Nolan's child from a prior relationship. One day Wallace and Nolan were arguing, and Wallace slapped Nolan's cheek.  At the time, Nolan was holding the parties' child and her other child was by her side.

When Nolan threatened to call the police, Wallace told her, "I'm going to kill you." Verbatim Report of Proceedings (VRP) (Oct. 17, 2016) at 39.  Wallace went to the kitchen and returned holding a butcher knife at his side with the blade facing Nolan.  Wallace was approximately "five, six feet" away from Nolan.  VRP (Oct. 17, 2016) at 42.

Wallace continued walking toward Nolan. Wallace put the knife down when Nolan opened the front door. Nolan called the police and later went outside with the children. While she was outside, the police arrived.

The State charged Wallace with second degree assault–domestic violence. During trial, Nolan testified that, when Wallace had the knife, she felt fearful that he was going to "hurt [Nolan] . . . [a]nd the kids." VRP (Oct. 17, 2016) at 47. Nolan opened the front door because she "didn't feel safe" and she wanted the neighbors to hear her if she screamed. VRP (Oct. 17, 2016) at 42. Nolan also testified that she called the police because she "didn't feel safe. Like, I didn't know what he was going to do." VRP (Oct. 17, 2016) at 44. Nolan further testified that before the police came, Wallace followed her outside and got into the car. She asked Wallace to get out of the car because she "[didn't] feel safe being . . . with [him]." VRP (Oct. 17, 2016) at 45.

The trial court instructed the jury that to convict Wallace of second degree assault:

> [E]ach of the following two elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about April 7, 2016, the defendant did intentionally assault Kimberly A. Nolan with a deadly weapon; and
>
> (2) That this act occurred in the State of Washington.
>
> If you find from the evidence that each of these elements have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if after weighing all the evidence you have a reasonable doubt as to any of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 23 (Jury Instruction No. 4). The trial court also instructed the jury that "[a]n assault is an act done with the intent to create in another apprehension and fear of bodily

injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury." CP at 24 (Jury Instruction No. 5); *accord* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 35.50 (4th ed. 2016) (WPIC).

A jury found Wallace guilty as charged. Wallace appeals.

## ANALYSIS

Wallace contends he was denied his due process rights because the State failed to prove all elements of second degree assault beyond a reasonable doubt. We disagree.

A.  LEGAL PRINCIPLES

Due process requires the State to prove all elements of the crime beyond a reasonable doubt. *State v. W.R., Jr.*, 181 Wn.2d 757, 762, 336 P.3d 1134 (2014). Evidence is sufficient if, when viewed in the light most favorable to the State, it permits a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Tilton*, 149 Wn.2d 775, 786, 72 P.3d 735 (2003). Courts must draw all reasonable inferences from the evidence in favor of the State and interpret the evidence most strongly against the defendant. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence receives the same weight as direct evidence. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). We defer to the fact finder on the resolution of conflicting testimony, credibility determinations, and the persuasiveness of the evidence. *Id.* at 874-75. Our review is de novo. *State v. Berg*, 181 Wn.2d 857, 867, 337 P.3d 310 (2014).

The "'law of the case' doctrine . . . requires the State to prove every element in the to-convict instruction beyond a reasonable doubt." *State v. Johnson*, 188 Wn.2d 742, 762, 399 P.3d

507 (2017). "[J]ury instructions not objected to become the law of the case." *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). The State "'assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the 'to convict' instruction.'" *State v. Dreewes*, ___ Wn.2d ___, 432 P.3d 795, 800 (2019) (quoting *Hickman*, 135 Wn.2d at 102).

B.      SECOND DEGREE ASSAULT

Wallace argues there is insufficient evidence to support his second degree assault conviction because the State failed to prove Wallace assaulted Nolan with a lack of intent to cause bodily injury. We disagree.

Under RCW 9A.36.021(1)(c), "A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree[,] . . . [a]ssaults another with a deadly weapon." The term "assault" is not statutorily defined; Washington courts apply the three common law definitions of assault.[1] *State v. Stevens*, 158 Wn.2d 304, 310-11, 143 P.3d 817 (2006).

1.      Lack of Intent to Inflict Bodily Injury

The trial court instructed the jury that to convict Wallace of second degree assault it must find that he intentionally assaulted Nolan with a deadly weapon by intending to "create in [her] apprehension and fear of bodily injury, and which in fact create[d] in [her] a reasonable

---

[1] Washington recognizes three common law definitions of "assault": (1) an unlawful touching; (2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it; and (3) putting another in apprehension of harm. *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009). Although the jury was instructed on two of the three common law definitions of assault, Wallace only challenges the "apprehension of harm" definition.

4

apprehension and imminent fear of bodily injury even though [Wallace] did not actually intend to inflict bodily injury." CP at 24 (Jury Instruction No. 5). This instruction follows WPIC 35.50.

Wallace argues that the State had the additional burden to prove beyond a reasonable doubt that Wallace did not actually intend to inflict bodily injury, which, he argues, the State failed to prove. But the instruction does not create an essential element requiring the State to prove a negative (i.e., that Wallace did not intend to inflict bodily injury). Instead, the instruction focuses on whether Wallace intended to create apprehension and fear of bodily injury and whether he actually created apprehension and fear of bodily injury regardless of his intent to inflict bodily injury.

Wallace cites no persuasive legal authority to support his contention that the State must prove a negative element. And the legal authority he does provide predates the current form of WPIC 35.50, which the relevant instruction followed. Specifically, Wallace relies on *State v. Byrd*, 125 Wn.2d 707, 715-16, 887 P.2d 396 (1995). There, the Supreme Court reversed an assault conviction on the ground that former WPIC 35.50 (1977), relieved the State of the burden of proving an element of its case because the jury was not instructed that it had to find that the defendant acted with the specific intent to cause apprehension or fear of bodily harm. *Byrd*, 125 Wn.2d at 715-16. The relevant paragraph of former WPIC 35.50 at the time of Byrd's trial provided, "An assault is also an intentional act, with unlawful force, which creates in another a reasonable apprehension and fear of bodily injury, even though the actor did not actually intend to inflict bodily injury." *Id.* at 710.

This paragraph in former WPIC 35.50 was deemed to be an erroneous statement of the law because it allowed a jury to find only that the defendant acted intentionally and the result of the

act was the creation of a reasonable apprehension and fear of bodily injury, rather than the defendant acted with the intent to create this apprehension or fear. *Byrd*, 125 Wn.2d at 715. Notably, the court did not hold that the State must prove the actor did not actually intend to inflict bodily injury as an essential element of second degree assault. Accordingly, we find Wallace's argument that the State was required to prove a negative—that Wallace lacked intent to inflict bodily harm—unpersuasive.

2.      Due Process Satisfied

The evidence shows Wallace and Nolan were arguing when Wallace slapped Nolan's cheek. Nolan was holding the parties' child and her other child was by her side. When Nolan threatened to call the police, Wallace told her, "I'm going to kill you." VRP (Oct. 17, 2016) at 39. Wallace retreated to the kitchen and returned holding a butcher knife at his side with the blade facing Nolan. He got approximately "five, six feet" away. VRP (Oct. 17, 2016) at 42. Wallace continued walking toward Nolan. Wallace put the knife down after Nolan opened the front door. Nolan called the police and later went outside with the children. While she was outside, the police arrived.

Nolan testified that when Wallace had the knife she felt fearful that he was going to "hurt [Nolan] . . . [a]nd the kids." VRP (Oct. 17, 2016) at 47. Nolan also testified that she opened the front door because she "didn't feel safe" and she wanted the neighbors to hear her if she screamed. VRP (Oct. 17, 2016) at 42. Nolan further testified that she called the police because she "didn't feel safe. Like, I didn't know what he was going to do." VRP (Oct. 17, 2016) at 44. Before the police came, Wallace followed her outside and got into her car. She asked Wallace to get out because she "[didn't] feel safe being here with [him]." VRP (Oct. 17, 2016) at 45.

6

No. 49592-9-II

Viewing this evidence in the light most favorable to the State, a rational trier of fact can find beyond a reasonable doubt that Wallace assaulted Nolan with a deadly weapon by intending to create in Nolan apprehension and fear of bodily injury, and in fact caused Nolan to have reasonable apprehension and imminent fear of bodily injury regardless of whether Wallace actually intended to inflict bodily injury. Accordingly, Wallace was not denied his due process rights because the evidence was sufficient to convict Wallace of second degree assault.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

                                            , A.C.J.

Lee, A.C.J.

We concur:

Sutton, J.

Nevin, J.P.T.

7