**FILED**
**JUNE 2, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36543-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JASON RAY STAGGS | ) | |
| aka JASON RAY WEISKOP, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Jason Staggs challenges his conviction for attempted

first degree robbery. He argues the trial court violated his constitutional right to present a

defense, namely the defense of misidentification, when it precluded evidence that the

victim's blood alcohol content (BAC) result was .297. We agree the trial court

committed constitutional error. But because the error was harmless beyond a reasonable

doubt, we affirm.

FACTS

On February 12, 2018, at around 6:00 p.m., Scott Flory left his house to walk to

the Moezy Inn Tavern to play in a pool tournament. On his way there, a dark vehicle

driven by a woman stopped near Flory and two men jumped out. The men accused Flory of stealing the pool stick case he was carrying. Flory walked away, but then felt pushed in the back. Flory turned around and the men told him to open the case. One of the men began walking away. Flory opened the case and placed it on the ground as instructed. The remaining man told Flory to walk away and leave the case. The man said, "[W]alk away or I'll stick you again." Report of Proceedings (RP) at 61. Flory refused. The man pushed Flory again in the chest, and Flory picked up his case. The remaining man then walked away.

Flory walked backward for a few blocks in fear the men would return. At this point, he felt cold, put his hand inside his shirt, and realized he was bleeding. He walked to the Moezy Inn Tavern for help.

An ambulance took Flory to the hospital where he received stitches for stab wounds to his back and chest. Flory admitted to hospital staff he had been drinking before he started walking to the Moezy Inn. Hospital testing revealed Flory had a BAC of .297.

Officer Julian Cedeno interviewed Flory at the hospital. Flory described the man who stabbed him as a white male around 40 years old, five feet six or seven inches tall, red hair, a short red beard, and wearing a baseball cap.

Flory later spoke with his daughter, Jaimee Parker, about the stabbing. She posted

a request for help on Facebook. One day, Daniel Stickney approached Ms. Parker in

public and told her he knew who stabbed her father. Ms. Parker knew Stickney because

Stickney's father had lived with her for years. Stickney said Jason Staggs, his cousin, had

stabbed her father. He said Staggs needed money, and "before he could even think about

anything, [Staggs] had stabbed him." RP at 168.

Flory contacted Stickney through Facebook messenger. Stickney responded, "it

was jason staggs i told him he was stupid and to stop the fucker was drunk." Ex. P8.

Stickney told Flory he would not testify, but offered to help Flory "get him back."

Ex. P13. Stickney described the attack to Flory:

> we where on are way to the store jason was drunk as fuck. he seen you
> walking down the street was like watch this he has a violen i told him to
> stay in truck and to leave you alone . . . he hopped out and started to say
> something to you . . . i noticed him hit you well I thought he hit you and he
> was telling you to drop your shit i was telling him to come ob some one is
> on there porch watching him he still wouldn't stop and then stabbed you a
> second time thats when we left and i freaked out on him cuz he was being
> drunk and stupid

Exs. P18-P20. Flory contacted police, and they photographed the Facebook messages.

The State charged Staggs with attempted first degree robbery and added a deadly

weapon enhancement. Before trial, the State moved in limine to prohibit Staggs from

eliciting testimony about Flory's BAC level. The trial court reserved ruling on the issue.

3

The State called a number of witnesses, including Detective Brian Cestnick. Detective Cestnick interviewed Staggs prior to his arrest. The detective remarked that Flory's description of Staggs was "pretty good." RP at 206. The detective testified that Staggs, at the time of arrest, was a 37-year-old white male, five foot nine inches tall, sandy blond hair, and sometimes had a red goatee.

That State also called Flory. Flory testified about the attack, his injuries, his Facebook messages with Stickney, and identified Staggs as the attacker. On cross-examination, Staggs sought to establish Flory could not reliably identify his attacker. Staggs asked Flory how many beers he had before heading to play pool. Flory responded he had four or five beers.

Staggs called the hospital doctor to testify about Flory's BAC level. The State renewed its motion in limine. It conceded alcohol impairment is admissible to show a witness may not remember events accurately. But it argued Staggs's opportunity to ask these questions was restricted to Flory's testimony, and Flory testified he had four or five beers. The State asserted having the hospital doctor testify Flory had a .297 BAC result was more prejudicial than relevant.

Staggs responded the BAC number was relevant to impeach Flory's memory of the event and to impeach Flory's testimony that he had only four or five beers.

The trial court granted the State's motion, and explained:

[Flory] did admit to drinking.  He didn't deny he was drinking.  He [testified he had] four to five to maybe four to six [beers].  Could have been any of those.  You could ask the doctor about [Flory's] competency to understand questions and answer his questions.

It appeared [Flory] had been drinking, but as far as getting that level out, that would be; one, highly prejudicial because [Flory] hasn't denied drinking, but unless the doctor can testify that it affected [Flory's] way of answering questions or had trouble remembering or all of that, at this point, the Court's not going to let the number in.

. . . .

. . . I think the doctor admitted [Flory] had alcohol in his system.  [Flory] admitted [this] to the doctor.  [Flory] admitted it on the stand.  So as far as I would ask that you restrict the doctor and tell him he's not to put out the number.

. . . .

. . . You can talk about [Flory] was intoxicated, but the purpose you're saying you want to bring it out for is to show that it could have affected his memory or otherwise.  [But you admit] the doctor can't even [say] that . . . because [the doctor] didn't test [Flory] for those things.

RP at 232-34.

The hospital doctor testified Flory had one penetrating wound to his back, another penetrating wound to his chest, and that each wound required three stitches to close.  Consistent with the trial court's ruling, the doctor testified only that Flory's test results were positive for alcohol.

Staggs testified in his own defense.  Staggs denied knowing Stickney or robbing Flory.  He testified he was a stabbing victim himself and, therefore, never carried a knife.

5

The jury found Staggs guilty of attempted first degree robbery, and answered "yes" on the deadly weapon special verdict form. Clerk's Papers at 56. The trial court sentenced Staggs to 120 months of incarceration.

Staggs timely appealed.

## ANALYSIS

Staggs argues the trial court erred by excluding Flory's .297 BAC result and this prevented him from effectively impeaching Flory. Staggs alludes to various constitutional rights and protections, including his constitutional right to present testimony in his defense. The State's brief responds only to this particular constitutional right. We agree this is the only constitutional right Staggs raises on appeal.

### THE RIGHT TO PRESENT A DEFENSE

We apply a two-step review process when determining if a trial court's evidentiary ruling has violated a defendant's constitutional right to present a defense. We first review the trial court's evidentiary ruling for an abuse of discretion. *State v. Arndt*, 194 Wn.2d 784, 797, 453 P.3d 696 (2019). We then review de novo the constitutional question of whether the ruling deprived the defendant of his Sixth Amendment to the United States Constitution right to present a defense. *Id.* at 798.

1.    Evidentiary ruling

As mentioned previously, we review a trial court's evidentiary rulings for an abuse of discretion.  "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

All relevant evidence is admissible unless its admissibility is otherwise limited. ER 402.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  ER 401.  The threshold for admitting relevant evidence is low; even minimally relevant evidence is admissible.  *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 669, 230 P.3d 583 (2010).

Here, Flory's .297 BAC result was between three and four times the legal driving limit.  This tends to show two things.  First, Flory probably had more than four or five beers.  Second, as conceded by the State below, Flory's ability to remember details could have been impaired.  Whether Flory had more than five beers was not relevant to who robbed him.  But Flory's ability to remember the details of his attacker was relevant to who robbed him.

7

No. 36543-3-III
*State v. Staggs*

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. ER 403. Here, the trial court excluded Flory's .297 BAC result because of unfair prejudice.

The admission of evidence presents a danger of unfair prejudice if the evidence is likely to provoke an emotional response from the jury rather than a rational decision. *Salas*, 168 Wn.2d at 671. The State did not articulate below, nor does it on appeal, how admission of Flory's .297 BAC result would provoke an emotional response from the jury rather than a rational decision. This lack of argument persuades us the trial court abused its discretion when it precluded the hospital doctor from testifying about Flory's .297 BAC result.

2.      Right to present testimony in one's defense

The United States Constitution and the Washington Constitution guarantee a criminal defendant's right to present testimony in one's defense. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Hudlow*, 99 Wn.2d 1, 14, 659 P.2d 514 (1983). "A defendant's right to an opportunity to be heard in his defense, including the rights to

8

examine witnesses against him and to offer testimony, is basic in our system of jurisprudence." *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010).

"Evidence that a defendant seeks to introduce 'must be of at least minimal relevance.'" *Id.* (quoting *State v. Darden*, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002)). Defendants do not have a constitutional right to present irrelevant evidence, only relevant evidence. *State v. Gregory*, 158 Wn.2d 759, 786 n.6, 147 P.3d 1201 (2006), *overruled in part on other grounds by State v. W.R.*, 181 Wn.2d 757, 336 P.3d 1134 (2014). If the excluded evidence is relevant, the burden is on the State to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial. *Darden*, 145 Wn.2d at 622.

As mentioned previously, Flory's .297 BAC result was relevant to establish he may have been unable to accurately identify his attacker. The State fails to persuade us that Flory's high BAC result would have been so prejudicial as to disrupt the fairness of the fact-finding process. We conclude the trial court's ruling violated Staggs's constitutional right to present testimony in his defense.

9

3.      Harmless error

When a reviewing court is convinced beyond a reasonable doubt that any

reasonable jury would have reached the same result without the error, an error of

constitutional magnitude is harmless. *Jones*, 168 Wn.2d at 724.

Flory described his attacker hours after the attack to Officer Cestnick. Flory's

description was detailed and largely matched Staggs's physical description. This leads us

to believe, if Staggs committed the crime, a jury would have found that Flory was a

highly functional alcoholic who, despite his .297 BAC result, could recall the details of

his attacker.

Stickney's trial testimony was compelling and convinces us the trial court's error

was harmless beyond a reasonable doubt. Prior to testifying, Stickney pleaded guilty to

second degree assault in connection with the robbery. He was transported from the Walla

Walla Penitentiary to testify, and he did not want to testify. The State did not offer him

anything for his testimony. He acknowledged he could suffer in prison because of his

testimony. Despite all this, he testified consistent with his earlier Facebook statements—

Staggs stabbed Flory.

Even had the trial court permitted the hospital doctor to testify that Flory's BAC

result was .297, we are convinced beyond a reasonable doubt the jury would have found

Staggs guilty of attempted first degree robbery. It would have found Flory was a highly functional alcoholic who could remember his attacker, and it would have believed Stickney's consistent testimony.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Pennell, C.J.                    Fearing, J.