**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| STATE OF WASHINGTON, | No.  51752-3-II |
| Respondent, | |
| v. | |
| ZACKARY WIXON CALDWELL, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Zackary Wixon Caldwell appeals his conviction for indecent liberties, alleging that reversal is required based on prosecutorial misconduct, ineffective assistance of counsel, and cumulative error. The State concedes that the prosecutor improperly evoked community safety concerns during closing arguments, but argues that no other misconduct occurred. In addition, any prosecutorial errors were insufficiently flagrant, ill intentioned, or prejudicial to constitute misconduct. The State also argues that Caldwell received effective assistance of counsel during his trial and that there was no cumulative error.

We reject the State's concession, holding that no prosecutorial misconduct or ineffective assistance of counsel occurred, and we affirm Caldwell's conviction.

FACTS

Caldwell was convicted of indecent liberties in 2018. He appeals, seeking reversal of his conviction.

Caldwell and the victim, had an on-again, off-again consensual sexual relationship. The victim was staying with Caldwell in December 2015. One night, she and Caldwell smoked marijuana and drank alcohol together at Caldwell's house. She fell asleep on the living room couch at around 4:00 a.m. It is undisputed that Caldwell had sexual intercourse with her on the couch a

couple of hours later. He testified that she was awake and the encounter was consensual. She testified that she awoke to him raping her and that she did not resist because she was shocked and she knew resistance was futile. It is undisputed that as soon as he finished and left the room, she called a mutual friend to pick her up, went to the hospital, and asked for a sexual assault examination. She then called the police to report the assault the following day.

Caldwell's and the victim's testimony conflicted about the nature of their relationship and the circumstances surrounding the incident. The victim testified that she had only two consensual sexual encounters with Caldwell, the most recent of which occurred several months before the offense. Caldwell testified that he and the victim had an ongoing sexual relationship that persisted even though she was dating a mutual friend and that their encounter that morning was typical for their relationship. The victim testified that she consumed large amounts of alcohol and marijuana at a party the night before. Caldwell testified that there was no party and that he saw the victim drink one alcoholic beverage and smoke a small amount of marijuana, but she was "[b]asically sober." 2 Verbatim Report of Proceedings (VRP) (Feb. 22, 2018) at 260.

At trial, the prosecutor asked the victim and Lisa Curt, the sexual assault nurse who examined her, about the physical details of the sexual assault exam. Except for one hearsay objection, defense counsel did not object to the victim's testimony. Similarly, the prosecutor's direct examination of Curt asked for details about sexual assault exams generally, and specifically about the victim's exam. Defense counsel did not object to this testimony.

In addition to testifying himself, Caldwell called two of his friends to testify about the victim's demeanor in the days following the incident and her reputation for truthfulness in the community. One friend said that she was "calm and collected" when he saw her a day or two after

the incident. *Id.* at 230. The other friend said that she acted happy the next day and that this was unlike other women he knew who had been sexually assaulted.

In closing, the prosecutor retold the State's version of events, including the sexual assault examination, followed by a summary of the victim's experience participating in the prosecution:

> And what did this all get her? Well, she's been subjected to multiple interviews, had to talk to the defense attorney, came in here told her story to a group of 14 strangers, talked about this experience, which is obviously upsetting to her. And you got to witness [her]. [She] sat right here in this chair, right here. You guys are right here. She was this close to you. You heard her. You saw into her eyes. You saw her emotion. She was upset as she got up there and talked about this.

> This was difficult, I would submit to you, for her to say. This has been a process for her, she explained. She lost her relationship with her boyfriend, she has had to talk about this with multiple people. She has had to go through this process since 2015.

3 VRP (Feb. 23, 2018) at 327-28. The prosecutor ended with, "I submit to you at the end of this whole process you will be convinced beyond a reasonable doubt that the defendant committed the crime of indecent liberties." *Id*. at 333.

Defense counsel responded to the prosecution's narrative by contending that the victim had "buyer's remorse" about consensual sex and fabricated the assault to preserve her relationship with her boyfriend. *Id.* at 346. Counsel noted inconsistencies between the story she told police and the testimony that she gave at trial. He emphasized that "really this case boils down to credibility, because you are going to have to weigh what you believe." *Id.* at 336. He also highlighted that the victim waited a day to make a report to police, saying, "If you are sexually assaulted, you want to call the police, especially if you are going to go and get a sexual assault kit done. You are going to go to the hospital. It just makes sense. Any other alternative doesn't make sense." *Id.* at 347.

In rebuttal, the prosecutor argued:

[The victim] got up here and told you how she felt. Now the defense is telling you, she didn't act properly for a victim of sexual assault. If she was a victim of sexual assault, she would do A, B, C, D, E. She would call the police on her way to Centralia [Hospital]. Is there a guide book for how a young lady, a female, a woman acts as a victim of sexual assault? Is there a guide book that [she] would carry around, "How Do I Behave After I've Been Sexual[ly] Assaulted"? Are there rules for how a lady, a woman, is supposed to behave after being sexually assaulted? And if she doesn't meet the standards that other people impose and say that's the way you should act, then you are not a victim? Is that how it works? That if you don't act a certain way that someone else says you should, then you are not a victim of sexual assault? Is that how it works around here? No.

*Id.* at 350-51. The prosecutor closed his rebuttal argument by reaffirming that the case involved dueling narratives, arguing the impracticality of the defense's story, and asking the jury to return a guilty verdict:

Something must have happened that night, something very serious, something that would make her say, I was assaulted, call some person to pick her up, take her to a hospital--two hospitals, tell her boyfriend something that probably wasn't easy to tell him, and then to report this to the police.

You have to look at both versions of events and decide which one makes more sense, and I submit to you when you look at the defendant's version of events, it's not reasonable. It doesn't make sense. He's added things that are so crucial late in the game that he never told law enforcement to begin with. It just doesn't make sense. So ultimately you need to ask yourself, does this make any sense to you that a woman, a young lady, with a boyfriend would one night all of a sudden have consensual sex with her boyfriend's friend, her friend, then submit herself to an invasive, uncomfortable physical examination, interviews with law enforcement, defense attorneys, testify in front of all of you just because on December 2, 2015, she felt like calling it a sexual assault. Does that make any sense? I submit it does not. And I'm going to ask you to go back there and weigh the evidence, use your common sense, think about all the flaws in the defendant's version of events and story, the facts that he omitted earlier, and I'm going to ask you ultimately to return a verdict of guilty, because the state has proven each and every element of indecent liberties beyond a reasonable doubt. Thank you for your time and attention.

*Id.* at 361-62. Defense counsel did not object to the prosecutor's arguments during closing.

The jury instructions directed the jury to decide the case based on the evidence, including an instruction explaining that the attorneys' statements are not evidence. The instructions reminded

jury members to "not let [their] emotions overcome [their] rational thought process." Clerk's Papers (CP) at 91. The instructions also stated that the State must carry the burden to prove guilt beyond a reasonable doubt, that a defendant is presumed innocent, and that a "reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence." CP at 92.

The jury found Caldwell guilty of indecent liberties, and he appeals.

## ANALYSIS

### I.    PROSECUTORIAL MISCONDUCT

A.    Burden for Establishing Prosecutorial Misconduct

A defendant alleging prosecutorial misconduct has the burden of proving that the conduct was both improper and prejudicial to the defendant. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Failure to object at trial constitutes a waiver of error unless the defendant demonstrates that the prosecutor's conduct was so flagrant and ill intentioned that a curative instruction would not have eliminated the prejudicial effect on the jury and that there is a substantial likelihood that the resulting prejudice affected the jury's verdict. *Id.* at 760-61.

We evaluate a prosecutor's conduct in the context of the entire argument, the issues in the case, the evidence addressed by the argument, and the jury instructions. *State v. Scherf*, 192 Wn.2d 350, 394, 429 P.3d 776 (2018). Even improper remarks are not grounds for reversal if they were "a pertinent reply" or response to defense counsel's acts or statements *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994). Reversal is not required so long as the remarks did not go beyond what was necessary to respond to the defense and were not "so prejudicial that a curative instruction would be ineffective." *State v. Gentry*, 125 Wn.2d 570, 643-44, 888 P.2d 1105 (1995).

B.      Testimony and Argument About the Sexual Assault Examination

Caldwell alleges that the prosecutor appealed to the jurors' passions and prejudices and encouraged them to convict based on emotion by discussing the details of the sexual assault exam during direct examination of the victim and Curt. Caldwell asserts that the prosecutor "deliberately and repeatedly commented on [the exam in] a way designed to incite an emotional response and bolster [the victim]." Br. of Appellant at 22. Caldwell argues these were "unfair efforts to incite the jury's passions and prejudices . . . and make [the victim] more sympathetic." *Id.* at 23. We disagree.

Prosecutors may not make deliberate appeals to the jury's passion and prejudices, nor may a prosecutor encourage the jury to decide the verdict based on sympathies instead of on properly admitted evidence. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 711, 286 P.3d 673 (2012) (plurality opinion); *State v. Fedoruk,* 184 Wn. App. 866, 890, 339 P.3d 233 (2014). We have previously held that a prosecutor committed misconduct by asserting her opinion of the defendant's guilt immediately after a discussion of the murder victim's virtues while showing the jury inflammatory images that were not admissible evidence. *Fedoruk*, 184 Wn. App. At 890. Similarly, Division One has held that a prosecutor committed misconduct by inviting a jury to imagine what a murder victim was thinking and by telling the jury that the victim knew she was going to die. *State v. Whitaker*, 6 Wn. App. 2d 1, 19, 429 P.3d 512 (2018), *review granted*, 193 Wn.2d 1012, 443 P.3d 800 (2019).

In contrast, in *State v. Gregory*, 158 Wn.2d 759, 805-06, 809, 147 P.3d 1201 (2006), *overruled on other grounds by State v. W.R.*, 181 Wn.2d 757, 336 P.3d 1134 (2014), the prosecutor elicited extensive narrative testimony from the victim about how she felt about having to testify. The prosecutor re-read the testimony during closing and argued that the defense had to make the

victim look like a prostitute to succeed. On appeal, the defendant alleged both a chilling of his constitutional rights and an improper appeal to jury sympathy. *Id.* at 806. The Washington Supreme Court disagreed, holding that testimony about the difficulty of testifying was not an improper appeal to the jury's sympathy because the testimony was introduced to rebut the defendant's assertion that the victim was out for revenge and not credible. *Id*. at 808-10. In addition, the jury instructions "explaining that the jury should not let sympathy guide its decision would arguably have cured any sympathetic tendencies the jury may have had." *Id*. at 809.

Like *Gregory*, this case turned on relative credibility. Caldwell's theory of the case was that the victim invented the sexual assault story to keep her boyfriend from breaking up with her. The prosecutor here elicited testimony to support the State's assertion that a sexual assault exam is not a procedure that one undergoes on a whim, a direct challenge to the defense's theory that the victim had "buyer's remorse" about consensual sex and fabricated the assault to preserve her relationship. 3 VRP (Feb. 23, 2018) at 346-47. The prosecutor did not extoll the victim's virtues as in *Fedoruk* or invite the jury members to imagine themselves in her shoes as in *Whitaker*.

The State's trial strategy was built to emphasize the victim's credibility by highlighting the unpleasantness of the process that she subjected herself to, implying to the jury that she would not have undergone the sexual assault exam unless she had truly been a victim of an assault. We hold that the prosecutor did not err when he elicited this testimony.

C.    Argument That Having to Testify Upset the Victim

Caldwell alleges that the prosecutor "bolstered [the victim] by suggesting that jurors should draw a negative inference from facts relating to Caldwell's exercise of his constitutional rights" to a jury trial by evoking the jury's sympathy for "what she had to go through as a normal part of a jury trial." Br. of Appellant at 17, 21. This argument fails.

Prosecutors cannot invite juries to draw negative inferences from defendants' exercise of their constitutional rights. *See, e.g.*, *State v. Martin*, 171 Wn.2d 521, 535-36, 252 P.3d 872 (2011) (prosecutor arguments "'tied only to the defendant's presence in the courtroom and not to his actual testimony'" violated the Washington Constitution whereas questioning defendant's credibility during cross-examination was permissible) (quoting *Portuondo v. Agard*, 529 U.S. 61, 77, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000) (Ginsburg, J., dissenting)); *State v. Jones*, 71 Wn. App. 798, 811-12, 863 P.2d 85 (1993) (improper, but not prejudicial, for prosecutor to invite jury to draw negative inferences from defendant exercising right to cross-examine witness by highlighting that defendant made direct eye contact with child victim and that victim cried and refused to return to court). To determine whether there has been an improper comment, we examine whether the prosecutor intended their remarks to comment on the defendant's exercise of his rights. *Scherf*, 192 Wn.2d at 391.

For example, in *Gregory*, the prosecutor used the victim's testimony to argue in closing that the victim "did not relish having to testify and be cross-examined." 158 Wn.2d at 807. This supported the State's argument that it was unlikely that the victim "would have put herself through a trial to avenge a broken condom." *Id.* Because the prosecutor "did not specifically criticize the defense's cross-examination of [the victim] or imply that Gregory should have spared her the unpleasantness of going through trial," the prosecutor's questioning and argument were not improper. *Id.* at 807. "[T]he argument merely focused on the credibility of the witness." *Scherf*, 192 Wn.2d. at 391 (describing the *Gregory* court's reasoning).

Here, the prosecutor's closing arguments retold the story of the sexual assault exam and "multiple interviews" that the victim gave, noting that she "came in here, told her story to a group of 14 strangers, talked about this experience, which is obviously upsetting to her" and emphasized

8

that "[t]his has been a process for her[,] . . . [s]he lost her relationship with her boyfriend, she has had to talk about this with multiple people. She has had to go through this process since 2015." 3 VRP (Feb. 23, 2018) at 327-28.

The testimony in this case more closely resembles the testimony and arguments from *Gregory* than from cases holding that prosecutorial misconduct occurred. The prosecutor's response to Caldwell's theory of the case—that the victim alleged a sexual assault to avoid a breakup with her boyfriend—legitimately required discussing why bringing sexual assault allegations to trial had not been easy for her. Like in *Gregory,* the prosecutor's closing remarks did not imply that Caldwell should have spared the victim from going to trial. The argument instead focused on the credibility of the witnesses. The remarks therefore served a purpose other than commenting on Caldwell's exercise of his right to a jury trial. We hold that the prosecutor did not invite the jury to draw negative inferences from Caldwell's exercise of his constitutional right to a jury trial.

D.        "Guidebook for Sexual Assault Victims" Metaphor

Caldwell argues that the prosecutor "invoked community concerns about believing women claiming sexual misconduct" by suggesting that the defense wanted the victim to follow a "'guidebook'" on how to behave like a sexual assault victim. Br. of Appellant at 25. The State agrees that the comment evoked community concerns, but asserts that the comment was not prejudicial. We disagree with both parties and conclude that the prosecutor's comment was not improper.

The remark was a pertinent reply to defense counsel's closing argument. Prosecutors may not argue for convictions "to protect the community, deter future law-breaking, or [for] other reasons unrelated to the charged crime." *State v. Ramos*, 164 Wn. App. 327, 338, 263 P.3d 1268

(2011). However, remarks that are "a pertinent reply" are not grounds for reversal, so long as they are not so prejudicial that a curative instruction would not correct the resulting prejudice. *Russell*, 125 Wn.2d at 86.

Division One has held that a prosecutor committed misconduct by appealing to the jury to convict so that "'people can go out there and buy some groceries . . . or go to a movie . . . and not have to wade past the coke dealers in the parking lot. That's why . . . you're here . . . to stop [the defendant] from continuing that line of activities.'" *Ramos*, 164 Wn. App. at 338 (quoting closing argument). Division Three has held that implying that an acquittal would "'declar[e] open season on children'" was misconduct. *State v. Powell*, 62 Wn. App. 914, 918-19, 816 P.2d 86 (1991). *See also State v. Belgarde*, 110 Wn.2d 504, 508, 512, 755 P.2d 174 (1988) (misconduct to tell jury defendant was "'strong in'" group that prosecutor described as "'a deadly group of madmen,'" "'butchers that kill indiscriminately'"); *State v. Reed*, 102 Wn.2d 140, 143, 145, 684 P.2d 699 (1984) (misconduct for prosecutor to call witness and defendant liars in closing argument, to state that it "'must be very difficult to represent somebody like [the defendant] when you don't have'" a case, and to ask the jury, "'[a]re you going to let a bunch of city lawyers come down here and make your decision? A bunch of city doctors who drive down here in their Mercedes Benz?'" (emphasis omitted)).

Here, the defense introduced testimony from Caldwell's friend that the victim did not act like women he knew who had experienced sexual assault. During closing arguments, defense counsel said that "[i]f you are sexually assaulted, you want to call the police, especially if you are going to go and get a sexual assault kit done. . . . It just makes sense. Any other alternative doesn't make sense." 3 VRP (Feb.23, 2018) at 347. In rebuttal, the prosecutor wondered if there was a "How Do I Behave After I've Been Sexual Assaulted" guidebook that the victim was expected to

follow, asking, "Is that how it works? That if you don't act a certain way that someone else says you should, then you are not a victim of sexual assault? Is that how it works around here? No." *Id*. at 350-51.

The prosecutor made these remarks in direct response to testimony and to defense counsel's closing arguments about whether the victim's behavior made sense for a sexual assault victim. We hold that the prosecutor's remarks were a pertinent reply to the defense's arguments.

In addition, the argument was not so prejudicial that a curative jury instruction would have been ineffective. For example, the defendant could have requested an instruction directing the jury to focus only on the particular facts of this case. Or he could have asked for an instruction reminding the jury that its job was to focus on the evidence, and it was not permitted to consider sending a message about community values. An instruction could have cured any prejudicial effect. *See Russell*, 125 Wn.2d at 86.

The prosecutor's remarks about a guidebook were a pertinent reply to defense counsel's arguments and therefore they do not warrant reversal. Moreover, a curative instruction could have been effective, but defense counsel failed to object.

Caldwell also argues that the prosecutor denigrated his counsel and impugned him by using the guidebook metaphor to subvert challenges to the victim credibility. It is improper for the prosecutor to disparage defense counsel's role or integrity. *State v. Thorgerson*, 172 Wn.2d 438, 451, 258 P.3d 43 (2011); *see also State v. Lindsay*, 180 Wn.2d 423, 434, 326 P.3d 125 (2014) (prosecutor impugned defense counsel by calling defense's closing arguments "'a crock'"); *State v. Negrete*, 72 Wn. App. 62, 66-67, 863 P.2d 137 (1993) (prosecutor's comment that defense counsel was "'being paid to twist the words of the witnesses'" was improper, but not irreparably prejudicial).

Here, the prosecution never launched a direct or indirect attack on defense counsel or Caldwell beyond assertions that there were holes in Caldwell's story that did not make sense. The guidebook metaphor was not accompanied by language impugning the defense, and it was made in direct response to an argument that Caldwell raised. We hold that the prosecutor's comment was not improper as an attack on defense counsel.

E.      Description of the State's Burden in Closing

Caldwell argues that the prosecutor misstated the State's burden of proof during closing by emphasizing the two narratives presented in the case and stating that the jurors had "'to look at both versions of events and decide which one makes more sense.'" Br. of Appellant at 30-33 (emphasis omitted) (quoting 3 VRP (Feb. 23, 2018) at 360). Considering the entire argument in context, the prosecutor did not misstate the burden of proof.

Arguments that "shift or misstate the State's burden to prove the defendant's guilt beyond a reasonable doubt constitute misconduct." *Lindsay*, 180 Wn.2d at 434. A jury does not exist to "'solve'" a case or "'declare what happened on the day in question,'" their purpose is to determine if the State has carried its burden of proving the allegations against the defendant beyond a reasonable doubt. *State v. Anderson*, 153 Wn. App. 417, 429, 220 P.3d 1273 (2009).

During closing, the prosecutor acknowledged that "we know what this all comes down to ultimately. It's going to be what [the victim] told you and what [Caldwell] said."

> Mr. Caldwell's attorney is going to get to talk to you, tell you their version of events, give you a closing. And then . . . I'm going to come back and get to talk to you one more time. And we are going to go through sort of what evidence do we know is undisputed, what's [the victim's] story, and what's Mr. Caldwell's story, and where are the holes in Mr. Caldwell's story and why does it not make sense. So that's what we're going to do, and I submit to you at the end of this whole process *you will be convinced beyond a reasonable doubt that the defendant committed the crime of indecent liberties.*

3 VRP (Feb. 23, 2018) at 332-33 (emphasis added). Defense counsel also explained that "this case boils down to credibility, because you are going to have to weigh what you believe." *Id.* at 336. The prosecutor's rebuttal reminded the jury of the two versions of events, arguing that Caldwell's story did not make sense. The prosecutor finished by asking the jury to "weigh the evidence, use [their] common sense, think about all the flaws in the defendant's version of events and story, the facts that he omitted earlier, and . . . to return a verdict of guilty, *because the State has proven each and every element of indecent liberties beyond a reasonable doubt*." *Id.* at 362 (emphasis added).

Considering the whole argument in context, we hold that the prosecutor did not misstate the State's burden of proof. Instead, he repeatedly told the jury that the State must prove Caldwell's guilt beyond a reasonable doubt.

## II.        INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). "[W]e review the entire record in determining whether a defendant received effective representation." *State v. Carson*, 184 Wn.2d 207, 215-16, 357 P.3d 1064 (2015).

The defendant must demonstrate that his counsel's performance at trial was deficient, and that deficiency had a prejudicial effect. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). There is a strong presumption that counsel exercised reasonable professional judgment to render adequate assistance. *Carson*, 184 Wn.2d at 216. To demonstrate deficient performance, the defendant must show "'in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct.'" *Emery*, 174 Wn.2d at 755 (quoting *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995)). Prejudice ensues if there is a

"'reasonable probability'" that the result of the proceeding would have been different had defense counsel not performed deficiently. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (quoting *Strickland*, 446 U.S. at 694). Because the defendant must show both prongs, a failure to demonstrate either prong will end the inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

Caldwell argues that his counsel's failure to object to the prosecutor's alleged misconduct throughout the trial constitutes ineffective assistance of counsel. But because no prosecutorial misconduct occurred, defense counsel's failure to object cannot constitute deficient performance. *State v. Beasley*, 126 Wn. App. 670, 687-89, 109 P.3d 849 (2005). We hold that Caldwell's ineffective assistance claim fails.

### III.        CUMULATIVE ERROR

Caldwell finally argues that cumulative error warrants reversal. The cumulative error doctrine applies to trials with multiple errors that combine to deprive the defendant of a fair trial, even though each single error was harmless. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 17, 427 P.3d 621 (2018). Because we find no error, this argument also fails.

### CONCLUSION

We hold that the prosecutor did not commit misconduct in his examination of witnesses or in closing argument, and defense counsel was not deficient. We affirm Caldwell's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, C.J.

Melnick, J.